Law Office of Tanya Brannan
P.O. Box 3064
419 Orchard Street
Santa Rosa, California 95402
(707) 887-0865
brannanlaw@comcast.net

Sanford Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, New York 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948
swittels@nydclaw.com
*Pending Pro Hac Vice Admission*

E-filing

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

EDL

| | |
|---|---|
| VALERIE GEORGE, as Administrator and Personal Representative of THE ESTATE OF RYAN GEORGE; VALERIE GEORGE and TAJMAH BEAUCHAMP, as Legal Representatives for Jaida George and Ryan George, Jr.; VALERIE GEORGE, Individually; DONALD GEORGE; and TAJMAH BEAUCHAMP, Individually, | CV 08 2675 <br><br> Civ. No. ____ <br><br> **COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| SONOMA COUNTY SHERIFF'S DEPARTMENT; BILL COGBILL; COUNTY OF SONOMA; CALIFORNIA FORENSIC MEDICAL GROUP, INC.; MICHAEL E. DAGEY, R.N.; ELIZABETH KAISER; JAMES LUDERS, M.D.; LAURA RODRIGUEZ; SUTTER HEALTH; SUTTER MEDICAL CENTER OF SANTA ROSA; and DOES 1 through 25, inclusive, | |
| Defendants. | |

I.

## SUMMARY OF DEFENDANTS' WRONGFUL ACTIONS
## LEADING TO THE UNTIMELY DEATH OF RYAN GEORGE

1.    Ryan George died a cruel and unnecessary death in July 2007 at the young age of 22 due to the grossly substandard medical care he received while an inmate in the Sonoma County Main Adult Detention Facility (the "Facility" or "Jail"). As a result of the deficient and untimely care Mr. George received, the Plaintiffs, Mr. George's mother and Personal Representative/Administrator, Valerie George, together with his father, Donald George, his fiancée, Tajmah Beauchamp, and his children, Jaida George and Ryan George, Jr. bring this lawsuit for monetary damages caused by his wrongful death. Each of the Defendants, including (i) Defendant COUNTY OF SONOMA (the "County"), which owns and operates the Detention Facility, (ii) Defendant SONOMA COUNTY SHERIFF'S DEPARTMENT ("Sheriff's Department"), which operates the Facility, (iii) Defendant CALIFORNIA FORENSIC MEDICAL GROUP ("CFMG"), which is contracted to provide medical care to inmates in the Facility, and (iv) Defendant SUTTER MEDICAL CENTER OF SANTA ROSA ("Sutter"), which is contracted to provide general acute care to inmates that cannot be provided within the Facility, contributed to causing Mr. George's untimely suffering and death.

2.    At the time he was taken into custody, employees of the Facility – including the Defendants County, Sheriff's Department, and CFMG, and their medical staff – were made aware that Mr. George had sickle cell anemia and suffered periodic and serious sickle cell "crises" for which urgent medical treatment was required. Yet despite this knowledge, when Mr. George suffered the onset of such a crisis on or about June 28, 2007 – the Defendants failed to promptly respond to Mr. George's, or his family's cries for help. As a result of Defendants' egregious inattention and substandard care in failing to attend to Mr. George's basic needs, the young man died a horrible death, alone and naked on rubber bedding in his cell on or about July 9, 2007. Defendants' various actions and omissions violated the United States Constitution as well as

1

California statutory and common law, and the damages resulting from these violations are compensable in this action.

## II.

### JURISDICTION

3.      This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343. The Court maintains supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367.

## III.

### VENUE

4.      The claims alleged herein arose at the Sonoma County Main Adult Detention Facility (the "Facility" or "Jail"), Santa Rosa, California, which is located in the County of Sonoma, State of California. Venue for this action lies in the United States District Court for the Northern District of California. 28 U.S.C. § 1391 (b)(2).

## IV.

### PARTIES

5.      This action arises from the wrongful death of RYAN GEORGE, who was at all times mentioned herein a resident of the County of Sonoma, State of California. Plaintiff VALERIE GEORGE is the duly appointed Administrator and Personal Representative of THE ESTATE OF RYAN GEORGE (hereafter "Estate," unless otherwise specified), which is a legal resident of the County of Sonoma. The heirs of the estate are Ryan George's infant children JAIDA GEORGE and RYAN GEORGE JR., who are also residents of Sonoma County.

6.      Plaintiffs VALERIE GEORGE and DONALD GEORGE are the parents of Ryan George. Plaintiff VALERIE GEORGE is a legal resident of Sonoma County; DONALD GEORGE was a legal resident of Sonoma County at all times alleged in the instant complaint.

2

7.      Plaintiff TAJMAH BEAUCHAMP was the fiancée of RYAN GEORGE prior to his wrongful death and is the mother of JAIDA GEORGE and RYAN GEORGE, JR.  TAJMAH BEAUCHAMP is a resident of Sonoma County.

8.      RYAN GEORGE's family members, including VALERIE GEORGE, DONALD GEORGE, and TAJMAH BEAUCHAMP, regularly visited him in the Facility prior to the events resulting in his death and repeatedly attempted to visit him and intervene on his behalf during those events.

9.      Defendant SONOMA COUNTY SHERIFF'S DEPARTMENT ("Sheriff's Department") is and at all times mentioned herein was a public entity responsible for providing law enforcement and detention services for Defendant COUNTY OF SONOMA (the "County"), including supervising, operating, and managing the Sonoma County Main Adult Detention Facility (hereafter the "Jail," or "Facility").

10.     Defendant BILL COGBILL ("Cogbill") is, and at all times herein mentioned was, Sheriff of Defendant County, and is responsible for supervising, operating, and managing the Facility.

11.     Defendant COUNTY OF SONOMA ("County") is and at all times mentioned herein was a public entity authorized by law to establish certain departments responsible for enforcing the laws and protecting the welfare of the citizens and public employees of Sonoma County.  At all times mentioned herein, Defendant COUNTY was responsible for overseeing the operation, management, and supervision of the Sonoma County Main Adult Detention Facility, DEFENDANT SOMOMA COUNTY SHERIFF'S DEPARTMENT, DEFENDANT SHERIFF COGBILL, as well as the Sheriff's Deputies and Corrections Officers, and contracted entities and employees of the Facility, including without limitation Defendant CFMG and its doctors and nursing staff. Defendant COUNTY is liable for the negligent and reckless acts of all of these aforementioned parties, personnel and entities, as described herein.

12.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG"), is and at all times mentioned was a corporation authorized to do business and doing business in the County

3

of Sonoma, State of California, as a contract medical service provider to Defendants Sheriff's Department and County.

13.     Upon information and belief, Defendants MICHAEL E. DAGEY, R.N.; ELIZABETH KAISER; JAMES LUDERS, M.D.; and LAURA RODRIGUEZ are healthcare staff employed by Defendant CFMG, and provided medical professional services to Defendant Sheriff's Department and County.

14.     Defendant SUTTER MEDICAL CENTER OF SANTA ROSA ("Sutter") is a hospital affiliate of Defendant SUTTER HEALTH, a network of physician organizations, not-for-profit hospitals, and other health care service providers throughout Northern California. At all times mentioned, Defendant Sutter was a contract medical provider to Defendant Sheriff's Department and County, and provided general acute care for inmate health needs that could not be met within the County's correctional facilities.

15.     Upon information and belief, Defendants DOES 1 through 25 were each responsible in some manner for the injuries and damages alleged herein. The true names and capacities of defendants DOES 1 through 25, and each of them, are presently unknown to Plaintiffs. Plaintiffs therefore designate defendants DOES 1 through 25 by such fictitious names and when their names have been ascertained, Plaintiffs will amend this complaint to allege their true names and capacities.

16.     In committing the acts and/or omissions alleged herein, all Defendants acted under color of authority and/or under color of law. Plaintiffs sue all public employees named as Defendants in both their individual and official capacities.

### V.

### STATEMENT OF FACTS

17.     On or about May 31, 2007, law enforcement officials of the County and Sheriff's Department took Ryan George into custody at the Sonoma County Main Adult Detention Facility. Mr. George's detention records, including a pre-booking health screening, listed that he had sickle cell anemia and indicated that this disease involved periodic "sickle cell crises," for which Mr.

4

George was treated at Kaiser Permanente Hospital in Santa Rosa. The screening form further stated that Mr. George did not have any current symptoms but would report their recurrence.

18.     Following his detention on May 31, Mr. George's fiancée Tajmah Beauchamp visited him in the Jail approximately four days a week and spoke with him by telephone regularly. Mr. George's parents Valerie and Donald George also visited him during his confinement in the Facility, and also spoke with him by phone regularly.

19.     On or about June 28, 2007, Ryan George suffered the start of a sickle cell anemia crisis that required prompt, appropriate and responsive medical attention. Instead, the Facility and its employees, agents, nurses, deputies, guards, and/or corrections officers, and the Defendant Sonoma County Sheriff's Department, the Sheriff's Deputies, and CFMG, (collectively the Defendant "County" or "Detention Facility" unless otherwise specified), and Sutter Medical Center of Santa Rosa ("Sutter") and its physicians, staff and personnel, failed to properly address Mr. George's need for appropriate medical intervention and care.

20.     Ryan George suffered pain beginning or about June 28, 2007, and his pain and suffering continued and worsened over the next thirteen days -- until he died in custody on or about July 9, 2007 at the Facility. His suffering and death were caused by the untimely, substandard, inadequate, insufficient, reckless, and egregious lack of treatment and care provided to him for his sickle cell anemia and its related effects while he was in the custody of the County from May 31, 2007 to July 9, 2007, and while under the "care" of the County's agent, Sutter Medical Center of Santa Rosa, where Mr. George was admitted from July 1-3, 2007.

21.     On June 28, 2007, Mr. George submitted an Inmate Health Services Request Form to the County stating that his sickle cell anemia – which had been a longstanding condition – had recently been causing his arms and legs to "break out in pain" and that he needed "*help fast, before it gets worse…*"

22.     On or about June 28, 2007, Mr. George spoke with his mother, Valerie George, and told her that he was suffering from a sickle cell crisis and that his jailers were not providing him the medical care he needed despite his requests for urgent medical attention. On June 29, 2007, at

about 10:00 PM, Mr. George called his mother and told her that he was in great pain, particularly in his back, and that Jail personnel, including medical staff, continued to do nothing. Valerie George then spoke to someone in medical records at the Jail and warned that her son could die. She was told that someone on the medical staff would return her call, which did not occur.

23.     At approximately 2:40 P.M. on June 30, 2007, Valerie George again spoke with her son; he was in obvious pain and distress, crying and barely able to speak or breathe. Ryan again pled with her to obtain aid on his behalf as Jail personnel were neglecting to help him, and even mocking his inability to walk due to the sickle cell crisis.

24.     Valerie George then contacted the Jail and spoke to an individual named "Perez." Ms. George reported that her son needed fluids and couldn't walk. "Perez" responded that Mr. George had access to a water faucet and "can walk to the phone to call you, can't he?"

25.     Later on June 30, 2007, Mr. George called his fiancée Ms. Beauchamp. He told her that he was suffering and not getting help. He was crying and kept repeating that he was in really bad pain and that he loved her.

26.     Due to the lack of timely and appropriate care, and implementation of a proper protocol for treatment of his sickle cell crisis, Mr. George's condition worsened. On July 1, 2007, upon information and belief, the County finally transferred him to Sutter, where he continued to receive inadequate and deficient medical care.

27.     Although Defendant County, Defendant CFMG, and Defendant Sutter were aware that Mr. George had previously been successfully treated for his sickle cell anemia at Kaiser Permanente Hospital, and despite Kaiser's easier proximity to the Facilty, the Defendants County, CFMG and/or Sutter required that he be admitted to Sutter. In spite of Sutter's inability to properly treat Mr. George's sickle cell crisis, the Defendants County and Sutter refused numerous requests on the part of Mr. George's family and at least one doctor at Sutter to transfer Mr. George to Kaiser. Additionally, Mr. George's father, Plaintiff Donald George, volunteered to pay both to transport his son to Kaiser and for his subsequent care there if the County moved him, but the Defendants still refused.

6

28.    At about 12:50 P.M. on July 1, 2007, Plaintiff's mother Valerie George and Ms. Beauchamp went to the Jail to visit Mr. George. The cashier told them that Mr. George was not at the Facility and that she could not say where he was. Ms. Beauchamp asked a guard if he had been taken to the hospital. Valerie George and Ms. Beauchamp then went to Kaiser, assuming Mr. George had been taken there. When he was not present, they returned home and began calling other hospitals including Sutter Medical Center to inquire if he had been admitted. When calling Sutter, a Sergeant Chang, who apparently had Ryan under his custody there, came on the phone and said that Mr. George was in Sutter but would not be permitted to receive calls or have visitors.

29.    At about 3:30 PM on July 1, 2007, Valerie George received a telephone call from Defendant Sutter, reporting that Mr. George had been taken there between 9:00 and 9:30 that morning. During this call, one Dr. Matheson, upon information and belief, a member of a rotating group of physicians employed by Defendant Sutter which was overseeing Mr. George's care, said he was "very scared for your son"; he couldn't understand why Mr. George had not been transferred to Kaiser, as medical records indicated that Kaiser was where Ryan's own doctors were located and where he ordinarily received sickle cell treatment. Dr. Matheson further stated that he had attempted to make County personnel aware of the seriousness of Mr. George's condition and the need to transfer him to Kaiser. He suggested that Valerie George come to the hospital immediately.

30.    Following hours of telephone calls to the Sheriff's Department and Sutter, Valerie George was finally given permission to visit her son the evening of July 1, 2007; she arrived at the hospital accompanied by Donald George and Tajmah Beauchamp. After waiting another hour and a half, Valerie George was finally allowed to enter the Emergency Room for about ten minutes; Donald George and Ms. Beauchamp were permitted to accompany her in turn. Sergeant Chang from the Sheriff's Department told Mr. George's family members that this would be their one and only visit. They observed that Mr. George appeared in extremely poor condition and wore a makeshift diaper. Mr. George's family members were removed from the Emergency Room when Ms. Beauchamp began crying and praying over him. During their brief visit, family members heard Sergeant Chang and other corrections officers making jokes and laughing.

7

31.    During their visit, Dr. Matheson told Mr. George's family members that Ryan could not be given any pain medication because he was unable to ask for it. Dr. Matheson again advised that Mr. George should be taken to Kaiser and that he had notified the Sheriff's office accordingly. Again, the Doctor suggested that Defendant Sutter and its medical staff had limited capacity to treat a sickle cell crisis.

32.    Valerie George made numerous calls to the hospital and Jail on July 2, 2007, and was repeatedly hung up on. She finally got to speak to one Lieutenant Toby, who said that there was "no way" that she would be able to see her son and refused to update his condition. Later, a Dr. Mateo called from Sutter and said that Mr. George was still in poor physical condition. One of Mr. George's guards also contacted Valerie George, reporting that her son would be released the next day. When she objected that Ryan's status was still critical, the sergeant laughed. He reiterated that she was not permitted to see her son.

33.    After repeatedly being hung up on by hospital staff, Ms. Beauchamp went to Sutter at approximately 9:30 PM on July 2, 2007 to obtain information on his condition. She observed Mr. George in bed without an IV or oxygen and still in feeble condition. Upon being discovered, Ms. Beauchamp was made to leave and police officers told her that she would be arrested if she returned to the hospital. As Ms. Beauchamp left the premises, she encountered the doctor taking over Mr. George's care and implored that he be given fluids and oxygen.

34.    At approximately 1 PM on July 3, 2007, a family minister was able to visit Mr. George at Sutter. The minister reported that Mr. George had no IV or oxygen. No other visits to Mr. George were permitted at either the hospital or Jail, despite increasingly desperate requests from his loved ones and supporters.

35.    Although upon information and belief Mr. George was still in an unstable condition including remaining bed-ridden, Defendants County and Sutter transferred Mr. George back to the Jail on July 3, 2007. Mr. George's family members contacted Defendant Sutter at about 6:30 P.M. on July 3, and were told that he had been "gone a while." Valerie and Donald George and Ms. Beauchamp then went to the Jail to file an official "letter of concern" but were not allowed to visit

8

Mr. George.

36.     On July 4, 2007, Valerie George, Ms. Beauchamp, and Mr. Ben Terry, head of NAACP Sonoma County chapter, sought to visit Mr. George at the Jail and to inquire about his condition. The staffer at the entrance desk informed them that Mr. George couldn't be seen as he was refusing visits. When the family pressed to see Mr. George, a Sergeant Williams came down and reiterated that Mr. George refused to see them. After Mr. Terry asked for this "refusal" in writing, Sergeant Williams went back into the jail, returning later to change her story and report that Ryan was not refusing the visit, but was unable to come down to see them. We can't "make him come," the Sergeant added. The family and Mr. Terry then implored the Detention Center to administer IV fluids to Ryan, to which the sergeant replied "This is a jail, not a hospital, and we're not set up like that." Sergeant Williams also told the family and Mr. Terry that there were no doctors on hand due to the holiday and no medical treatment being given; furthermore, Mr. George was "property of the County" and could not be sent to Kaiser.

37.     During the morning of July 5, Ms. Beauchamp contacted the Jail and was told by a nurse that Mr. George was doing "fine". Then, at approximately 9 AM, Defendant Dr. Luders called Valerie George; he told her that Ryan was getting worse; Luders then asked Mrs. George, "What should I do?" She responded that he needed to be taken to the hospital and Dr. Luders answered that that "wasn't a possibility." Valerie George then urged him to call Ryan's doctor at Kaiser, stating, "you guys are going to kill my son." Dr. Luders hung up. Dr. Luders later called back and said that he had unsuccessfully attempted to contact Mr. George's regular physician. He again hung up on Valerie George. Upon information and belief, nobody from Defendants Sutter or the County ever consulted with Kaiser or Mr. George's regular physicians about his condition or treatment.

38.     On occasions not limited to those described above, Mr. George's mother, his fiancée, family members, and other concerned citizens, including Mr. Ben Terry, the local NAACP President, repeatedly tried to visit and contact Mr. George from the time they first learned he was suffering on or about June 28, 2007. Moreover, attorneys acting the at the request of Ryan's family

9

also contacted Defendant County's Jail personnel in order to ascertain whether the County was providing Mr. George with needed care. The Defendant County and Defendant Sheriff's Department, including Defendant CFMG and its staff, and Defendant Sutter repeatedly refused to allow the family, concerned citizens and attorneys to see Mr. George and communicate with him. Invariably, the Defendant County and hospital employees were dismissive or openly hostile, and refused to divulge information about Mr. George's condition.

39.     The various efforts and pleas of Mr. George's family members and other concerned interveners went rebuffed or ignored. Instead, under Defendants' neglect and disregard, Mr. George continued to deteriorate to the point where he was lying naked, alone on a rubber bed sheet without proper medical care or assistance. Mr. George died alone in his cell on or about July 9, 2007.

40.     The Defendant County failed to provide adequate medical care for Ryan George. The Defendant County and Sheriff's Department, and their Deputies, Corrections Officers, physicians and nurses, did not heed and respond appropriately to Ryan George's requests for medical attention, despite his intense pain and complaints. All Defendants, including the County's agent Defendant CFMG did not provide Mr. George adequate, proper and sufficient care when it became aware of his complaints and condition, and therefore, failed to timely and adequately provide him satisfactory medical care for his sickle cell anemia condition. Defendant County, which is responsible for the acts of the Detention Center and Defendant Sheriff's Department, and Defendant CFMG, improperly transferred Mr. George to Defendant Sutter Medical Center, where he continued to receive substandard and negligent treatment and to be neglected in his basic medical and personal needs.

41.     Ryan George would not have suffered and died had Defendant County and its employees and agents, including Defendants CFMG and Sutter, provided him the necessary, adequate and timely medical attention and intervention he required and was entitled to for his sickle cell anemia.

10

## VI.

## STATEMENT OF DAMAGES

42.    As a result of the acts and/or omissions of Defendants, Ryan George was deprived of various constitutional and statutory rights; and was further hurt and injured in his health, strength, and activity, sustaining injury to his person, all of which injuries caused Ryan George great mental, physical, and nervous pain and suffering and severe emotional distress.  The injuries resulted in Ryan George's death.

43.    As a further result of the acts and/or omission of defendants, Ryan George's family, including his mother, father, fiancée, infant son, and then-unborn child have been deprived of the care, companionship, and support of their loved one and have experienced and continue to experience great mental and emotional pain and suffering.

44.    The acts and/or omissions of Defendants, as alleged in this complaint were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights and basic welfare of Ryan George and for the emotional well-being of his family members.  Plaintiffs therefore pray for an award of punitive and exemplary damages in an amount that will be stated according to proof.

45.    Plaintiffs retained counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 as well as Cal. Civ. Code § 52, Cal. Welfare and Institutions Code § 15657, and Cal. Health and Safety Code § 1317.6(j).

## COUNTS ON BEHALF OF THE ESTATE

## FIRST CAUSE OF ACTION

**(42 U.S.C. §1983 – Cruel and Unusual Punishment:**

**Deliberate Indifference to Serious Medical Needs)**

**(Defendants Sheriff's Department, Cogbill, County, CFMG, Dagey,**

**Kaiser, Luders, Rodriguez, Sutter Medical Center, Sutter Health, and Does 1-25)**

46.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

11

47.    In doing the acts and/or omissions alleged herein Defendants were deliberately indifferent to the serious medical needs of Ryan George, which caused unnecessary and wanton infliction of pain and physical injury on Mr. George, resulting in his death, and resulted in the violation of his rights under the Eighth Amendment of the United States Constitution.

48.    By failing to properly screen, train, supervise, and/or discipline its personnel, Defendants COUNTY OF SONOMA, SHERIFF'S DEPARTMENT, and the SHERIFF BILL COGBILL subjected Ryan George to unnecessary and wanton infliction of pain and physical injury, resulting in his death, thereby violating his rights under the Eighth Amendment of the United States Constitution.

49.    By authorizing, ratifying, and/or condoning the acts and omissions of their co-Defendants, Defendants COUNTY OF SONOMA, SHERIFF'S DEPARTMENT, and SHERIFF BILL COGBILL subjected Ryan George to the unnecessary and wanton infliction of pain and physical injury, resulting in his death, thereby violating his rights under the Eighth Amendment of the United States Constitution.

50.    The acts and omissions complained of herein were done pursuant to customs and policies authorized, condoned, ratified and carried out by all Defendants that resulted in delayed and denied medical care for the purposes of saving money at the risk of inmates' health, and/or for inflicting physical and mental abuse on inmates as retribution in furtherance of a policy of misuse of power over inmates incarcerated in Sonoma County.

51.    The wanton and callous disregard of Ryan George's obvious and known serious medical needs – including, but not limited to, unreasonable delays in providing treatment; the refusal to transfer and release him to an appropriate medical facility even after his continued degeneration; the transfer of Mr. George back to the Jail despite his incapacitated and critical condition; and the subsequent abandonment of Mr. George in his cell until his demise – essentially transformed a jail term of several months into a death sentence. All Defendants subjected Ryan George to cruel and unusual punishment in violation of his rights under the Eighth Amendment to the United States Constitution.

52.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## SECOND CAUSE OF ACTION

### (42 U.S.C. §1983 – Inhumane Conditions of Confinement:
### Deprivation of Basic Necessities of Life)
### (All Defendants Except Defendant Sutter)

53.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

54.    In addition to failing to respond to Ryan George's serious need for medical care and treatment, Defendants were deliberately indifferent to his health and safety in neglecting his fundamental human needs for food, water, clothing, and basic hygiene. As a result, all named Defendants except Defendant Sutter and such Does as were employed by Defendant Sutter subjected Ryan George to unnecessary and wanton infliction of pain and physical injury in violation of his rights under the Eighth Amendment.

55.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983 – Deprivation of Life Without Due Process)
### (All Defendants)

56.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

57.    The Defendants deprived Ryan George of his health, strength, and activity, and ultimately his life, without due process of law in violation of the Fourteenth Amendment to the Untied States Constitution.

58.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

13

### FOURTH CAUSE OF ACTION

#### (42 U.S.C. § 1983—Violation of Bodily Privacy/
#### Unnecessary and Wanton Infliction of Pain/ Deprivation of Liberty Interest)
#### (All Defendants Except Defendant Sutter)

59.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

60.    As alleged above, Defendants abandoned Ryan George naked and incontinent in his cell for several days leading to his death.  During this entire period, Mr. George was visible to and observed by other inmates and Jail employees, including members of the opposite sex.

61.    Defendants' actions and omissions therein were excessive, vindictive, harassing, and wholly unrelated to institutional security or any other legitimate penological objective.  Reasonable and readily available alternatives existed to protect Mr. George's privacy and dignity, including but not limited to providing bodily coverage consistent with his condition and/or transferring him to an appropriate health unit or outside medical facility where he could be cared for and attended to properly.

62.    As a result, Defendants callously, maliciously, and gratuitously subjected Mr. George to extreme degradation, humiliation, anguish, brutality and the unnecessary and wanton infliction of pain and accordingly violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

63.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

### FIFTH CAUSE OF ACTION

#### (Negligence – California Government Code § 844.6(d))
#### (All Defendants)

64.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

14

65. On December 18, 2007, Plaintiffs presented a written COUNTY OF SONOMA claim form pursuant to California Government Code § 910, *et seq.* Plaintiffs duly amended this claim form on February 20, 2008 without changing the substance of the claims and allegations. Plaintiffs have complied with all applicable claim statutes.

66. Defendant COUNTY OF SONOMA rejected the claim on April 4, 2008, providing notice that Plaintiffs had six months to commence a legal action. Plaintiffs have timely filed their Notice of Claim and this Complaint within all applicable time limitations.

67. Defendants COUNTY OF SONOMA, SONOMA COUNTY SHERIFF'S DEPARTMENT, BILL COGBILL, CALIFORNIA FORENSIC MEDICAL GROUP., INC., MICHAEL E. DAGEY, R.N., ELIZABETH KAISER, JAMES LUDERS, M.D., LAURA RODRIGUEZ, SUTTER HEALTH; SUTTER MEDICAL CENTER OF SANTA ROSA, and DOES 1 through 25, owed Ryan George, as an inmate in Defendants' custody, care and control, a duty of due care to protect his health and physical safety.

68. Defendants were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as custodians and/or health care providers to Ryan George. It was foreseeable that as a result of Defendants' acts and omissions, as described above, Ryan George's condition of sickle cell crisis would worsen, resulting in his physical injury, incapacitation, and death.

69. WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## SIXTH CAUSE OF ACTION

### (Failure to Summon Medical Care for Inmate – Cal. Government Code § 845.6) (All Defendants Except Defendant Sutter)

70. Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

15

71.    Defendants had a mandatory duty under California Government Code § 845.6 to summon medical care for inmates whom they knew, or had reason to know, required immediate medical care.

72.    Defendants failed to discharge their duty imposed by California Government Code § 845.6.

73.    As a direct and proximate result of Defendants' acts and/or omissions, hereinabove described, Ryan George suffered severe physical injury and trauma, resulting in his painful and untimely death.

74.    Defendants COUNTY OF SONOMA, SONOMA COUNTY SHERIFF'S DEPARTMENT, BILL COGBILL, and CALIFORNIA FORENSIC MEDICAL GROUP., INC., are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of *respondeat superior*.

75.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## SEVENTH CAUSE OF ACTION

### (Failure to Discharge Mandatory Duty – California Government Code § 815.6)

### (All Defendants Except Defendant Sutter)

76.    Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

77.    California Government Code § 815.6 makes a public entity liable for its failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury.

78.    California Government Code § 845.6 imposes such a mandatory duty.  The purpose of § 815.6 is, in part, to ensure the safety and health of inmates and to provide inmates with medical care when the need for medical care becomes apparent.

79.     Defendants breached the mandatory duty owed to Ryan George pursuant to California Government Code § 845.6. As set forth herein, Defendants' breach of said duty causes the type of harm to Ryan George that the enactment was designed to prevent.

80.     WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## EIGHTH CAUSE OF ACTION

### (Medical Malpractice)

### (Defendants CFMG, Sutter, and the Individual Defendant Medical Personnel)

81.     Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

82.     Defendants CALIFORNIA FORENSIC MEDICAL GROUP., INC., MICHAEL E. DAGEY, R.N., ELIZABETH KAISER, JAMES LUDERS, M.D., LAURA RODRIGUEZ, SUTTER HEALTH; SUTTER MEDICAL CENTER OF SANTA ROSA, and DOES 1 through 25, owned a duty to Ryan George to use the care and skill ordinarily exercised in like cases by reputable members of their medical professions. Said Defendants owned a further duty to Ryan George to use reasonable diligence and their best judgment in the exercise of their professional skills.

83.     Defendants breached their duty of care to Ryan George. Defendants were negligent and their conduct fell below a reasonable standard of care in their medical care and treatment of Ryan George.

84.     It was foreseeable that as a result of such Defendants' conduct, Ryan George would suffer harm. As a direct and proximate result of such conduct, Ryan George suffered severe physical injury and trauma, resulting in his painful and untimely death.

85.     WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

17

## NINTH CAUSE OF ACTION

### (42 U.S.C. § 1395dd—Emergency Medical Treatment and Active Labor Act ("EMTALA") -- "Patient Anti-Dumping Act")

### (Defendant Sutter)

86.     Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

87.     Ryan George came to Sutter for emergency treatment relating to his life-threatening sickle cell crisis. Hospital personnel determined that he had an emergency medical condition which placed his life and health in serious jeopardy and which created a serious risk of bodily impairment or dysfunction.

88.     At the time of his release from Sutter, Ryan George clearly remained in an emergency medical condition as defined by 42 U.S.C. § 1395dd(e)(1). Defendant Sutter and its personnel knew that Ryan George's condition was not yet stabilized within the meaning of 42 U.S.C. § 1395dd(e)(3) and that allowing him to be released to the Jail would likely result in the material deterioration of his condition and a substantial risk of death or serious bodily harm.

89.     Furthermore, Defendant knew that the Jail's medical facilities lacked the capacity to treat Ryan George's ongoing sickle cell emergency and that the Jail was not an appropriate facility for him to be transferred to under the statute.

90.     Nevertheless, despite Defendant's better judgment, it allowed Mr. George to be discharged and transferred back to the Jail in violation of 42 U.S.C. § 1395dd(c). Moreover, Defendant failed to follow the statute's protocol for the transfer of a patient in a non-stabilized emergency medical condition.

91.     These statutory violations give rise to strict liability for Ryan George's resulting injuries.

92.     As a result of Defendant's denial of essential emergency care, Ryan George suffered severe physical injury and trauma, resulting in his painful and untimely death.

18

93.     WHEREFORE, Plaintiffs pray for all relief provided by 42 U.S.C. § 1395dd(d)(2), including compensatory damages and punitive damages as allowed by law.

## TENTH CAUSE OF ACTION

### (Cal. Health & Safety Code §§ 1317, et seq. —Denial of Emergency Services and Care/ Improper Transfer of Emergency Patient for Non-Medical Reasons) (Defendant Sutter)

94.     Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

95.     Ryan George came to Sutter for treatment of an emergency medical condition within the meaning of Cal. Health & Safety Code § 1317.1(b) and was diagnosed by Sutter personnel as having such a condition.

96.     Nevertheless, Defendant cut short Ryan George's treatment without relieving, eliminating, or stabilizing his sickle cell crisis and while his health and safety remained at serious and immediate risk.   Instead, for non-medical reasons, Defendants improperly discharged and transferred Ryan George to the Jail despite knowing that the transfer created a medical hazard to Ryan George and that the Jail's health facilities were unequipped to treat his condition.

97.     Defendants actions as described herein violated Cal. Health & Safety Code §§ 1317 and 1317.2, and caused Ryan George severe physical injury and trauma, resulting in his painful and untimely death.

98.     WHEREFORE, Plaintiffs pray for all relief provided by Cal. Health & Safety Code § 1317.6(j), including compensatory and punitive damages and reasonable attorney's fees.

## ELEVENTH CAUSE OF ACTION

### (Patient Abandonment/Improper Withdrawal of Treatment)

### (Defendant Sutter and Responsible Sutter Personnel)

99.     Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

100.    Defendants undertook an obligation to provide treatment for Ryan George's life-threatening sickle cell medical emergency.

101.    At the time of his discharge, Ryan George remained in critical and unstable condition and at grave risk of serious physical injury or death.    Upon information and belief, Defendants knew that Ryan George required continued medical attention, that he was not in a suitable state to be transferred back to the Jail, that his ongoing sickle cell crisis could not be properly treated within the Jail, and that he faced severe and potentially lethal consequences as a result of the termination of hospital-based acute care and transfer back to the Jail.

102.    Pursuant to California common law, Defendants are liable for withdrawing treatment from their patients without due notice and the opportunity to secure alternative care.    Under the circumstances, releasing Mr. George to the Jail without stabilizing and alleviating his sickle cell crisis offered *no* possibility of an adequate substitute but became an effective death sentence.

103.    As a direct and proximate result of such conduct, Ryan George suffered severe physical injury and trauma, resulting in his painful and untimely death.

104.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## TWELFTH CAUSE OF ACTION

### (Reckless or Malicious Neglect of Dependent Adult –
### California Welfare and Institutions Code § 15657)
### (All Defendants)

105. Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

106. Ryan George was known by Defendants to have sickle cell anemia, as a result of which he experienced periodic "crises" involving acute pain and incapacitation.

107. During the sickle cell crisis lasting from approximately June 28, 2007 until his death on or about July 9, 2007, including his July 1-3 admission to Sutter Medical Center (a 24-hour hospital within the meaning of Cal. Health and Safety Code § 1250), Ryan George was a "dependent adult" as defined by Cal. Welfare and Institutions Code § 15610.23.

108. Defendants' conduct described herein constitutes "neglect" (as defined in Cal. Welfare and Institutions Code § 15610.57) of a dependent adult within their care or custody.

109. The actions and omissions on the part of Defendants rise to the level of reckless, oppressive, or malicious neglect, independently actionable under Cal. Welfare and Institutions Code § 15657. In failing to provide care to Mr. George and to attend to his basic needs, Defendants consciously disregarded the high degree of danger to his health, safety, and wellbeing and ultimately the serious risk to his life.

110. As a result of this egregious misconduct, Mr. George experienced extreme physical and mental pain and suffering, including severe emotional distress, prior to his death.

111. WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## THIRTEENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

### (All Defendants)

112.   Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

113.   Defendants owed Ryan George a duty of care to avoid exposing him to foreseeable harm. Defendants were negligent and fell below a reasonable standard of care when they did the acts described in the previous causes of action.

114.   It was foreseeable that as a result of Defendants' actions and inactions Ryan George would suffer psychological and physical harm, and as a result, would suffer extreme emotional and psychological distress and trauma.

115.   In fact, and as a direct and proximate result of Defendants' actions and inactions, suffered psychological and physical harm – resulting in his painful and untimely death – and extreme emotional and psychological distress and trauma in the days prior to his death.

116.   Plaintiffs' claim is not precluded by Cal. Code of Civ. Pro. § 377.34 as it piggybacks plaintiffs' Twelfth Cause of Action or, in the alternative, proceeds solely for economic and/or punitive damages.

117.   WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## FOURTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (All Defendants)

118.   Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

119.   The above described conduct of Defendants was calculated to cause or stood in reckless disregard of the possibility of causing, and did in fact, cause Ryan George substantial mental

22

anguish, grief, humiliation, and extreme mental and emotional distress.

120.    As a proximate result of the outrageous conduct of Defendants, Mr. George suffered extreme mental and emotional distress.

121.    The acts and omissions of defendants were done intentionally and/or in callous disregard for the comfort, safety, health and wellbeing of Mr. George and were further done for the purpose of saving costs at the expense of his obvious medical needs and distress and/or for the purpose of humiliating, oppressing, and inflicting emotional and mental distress upon Mr. George, and such conduct was done with the intent to deprive him of his constitutional rights or in willful and wanton disregard for those rights.

122.    Plaintiffs' claim is not precluded by Cal. Code of Civ. Pro. § 377.34 as it piggybacks plaintiffs' Twelfth Cause of Action or, in the alternative, proceeds solely for economic and/or punitive damages.

123.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## FIFTEENTH CAUSE OF ACTION

### (Cal. Civ. Code § 52.1—Bane Civil Rights Act)

#### (All Defendants)

124.    Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

125.    As alleged above, Defendants violated various constitutional and statutory rights belonging to Ryan George.

126.    Such violations were accompanied by threats, intimidation, or coercion on the part of Defendants. All Defendants interfered with or attempted to interfere with Mr. George's rights through threats, intimidation, or coercion.

127.    As a result, Plaintiffs pray for all damages allowable under Cal. Civ. Code § 52.1 (incorporating by reference Cal. Civ. Code § 52), including but not limited to actual damages,

23

exemplary damages, civil penalties, and attorney's fees.

## COUNTS ON BEHALF OF RYAN GEORGE'S FAMILY MEMBERS
### SIXTEENTH CAUSE OF ACTION

**(42 U.S.C. § 1983 – Due Process – Deprivation of Familial Relationships)**

**(On Behalf of Valerie George, Donald George, Tajmah Beauchamp,**

**Jaida George, and Ryan George Jr.)**

**(All Defendants)**

128.    Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

129.    By virtue of Defendants' egregious conduct as alleged above, including Defendants' deliberate indifference to Ryan George's serious medical needs and their refusal to provide timely and adequate care as well as food, water, clothing, and basic hygiene, Ryan George suffered an untimely, unnecessary, and easily preventable death.

130.    As a result, Ryan George's immediate family members were deprived of their constitutional right to familial association, society, and companionship, in violation of the Fourteenth Amendment to the United States Constitution.

131.    In doing the alleged acts and omissions, Defendants were deliberately indifferent to Plaintiffs' constitutional familial rights, demonstrating reckless and callous disregard for such rights. Furthermore, Defendants acted maliciously, wantonly, and oppressively pursuant to the customs and policies asserted above.

132.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

### SEVENTEENTH CAUSE OF ACTION

**(Wrongful Death- California Code of Civil Procedure § 377.60)**

**(On Behalf of Jaida George and Ryan George, Jr.)**

**(All Defendants)**

133.    Plaintiffs incorporate by reference and reallege each allegation made in all prior paragraphs as if alleged in full herein.

24

134.    As alleged above, Mr. George died as a result of Defendants' various wrongful acts and omissions including the unlawful and egregious failure to provide proper and adequate medical attention and care and to provide for his basic needs during his incapacitating health crisis.

135.    Mr. George's heirs, namely his two infant children, Jaida George and Ryan George, Jr., have suffered and continue to suffer loss of society, companionship, comfort, care, guidance, financial support, and other parental services as a result of their father's preventable death.

136.    WHEREFORE, Plaintiffs pray for all damages as allowed by law.

## EIGHTEENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (On Behalf of Valerie George, Donald George, and Tajmah Beauchamp)
### (All Defendants)

137.    Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

138.    Defendants blatantly and egregiously neglected the urgent medical and personal needs of Ryan George, resulting in his foreseeable and preventable death.

139.    During this episode, Mr. George communicated his serious health condition, Defendants' ongoing and callous misconduct in responding to his sickle cell crisis, and his severe pain, distress, and anxiety in pleas for help to his family members, including his mother Valerie George, father Donald George, and fiancée (and his children's mother) Tajmah Beauchamp.

140.    On July 1, 2007, these family members visited Mr. George at Sutter, where they observed him in a severe debilitated condition. They were informed that Mr. George had not been given any pain medication, including for a notoriously painful spinal tap procedure. One doctor also told them that he was scared for Ryan, who should be immediately transferred to Kaiser, implying that Ryan's life was in danger as a result of the continuing failure to do so (and the corresponding failure to provide equivalent and proper care at Defendant Sutter).

141.    Mr. George's family members and others including concerned citizens and attorneys repeatedly attempted to intervene on his behalf. However, their requests to visit Mr. George were refused, as well as their demands that Mr. George be given appropriate medical care and attention. Ordinarily, these family members would have been responsible for treatment decisions during his incapacitating health crisis; however, even their offers to pay for life-saving measures were flatly rejected.    Instead of being permitted to aid Mr. George, his family was forced to sit helplessly by, with Defendants' knowledge, while he was unlawfully abandoned and jettisoned by the Sutter Defendants and while he rotted and died under all Defendants' sorely lacking care.

142.    It was eminently foreseeable that Mr. George's immediate relatives, who had visited and contacted him on a regular basis prior to his sickle cell crisis and who desperately and vainly sought to help him, would suffer extreme emotional distress during his painful convalescence, during their harrowing and frantic ordeal to save his life, and as a result of his untimely death.

143.    Mr. George's closest family members were percipient witnesses to his pain, suffering, and incapacitation at the time of its occurrence as well as to the Defendants' ongoing and continuous tortious acts or omissions responsible for his distress, degeneration, and ultimate demise. Alternatively, under the circumstances of this case, Defendants owed them a direct duty of care.

144.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## NINETEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)
### (On Behalf of Valerie George, Donald George, and Tajmah Beauchamp)
### (All Defendants)

145.    Plaintiffs incorporate by reference and reallege herein each allegation in all prior paragraphs as if alleged in full herein.

146.    The above described conduct of Defendants – encompassing but not limited to the refusal of his family members' numerous requests to visit Ryan George while he was at significant

26

risk of death, to verify his safety and wellbeing, and to ensure proper and effective treatment including palliative care, as well Mr. George's unlawful and shocking discharge and transfer back to the Jail – was extreme and outrageous and was calculated to cause Mr. George's family members or in reckless disregard for the likelihood of causing them substantial mental anguish, grief, humiliation, and extreme mental and emotional distress.

147.    As a proximate result of the conduct of Defendants, Mr. George's family members suffered extreme mental and emotional distress to their damage in a sum that will be stated according to their proof.

148.    The acts and omissions of Defendants were done intentionally and in callous disregard for the comfort, health and wellbeing of Ryan George and for the purpose of humiliating, oppressing, and inflicting emotional and mental distress upon Ryan George and his known family members.

149.    WHEREFORE, Plaintiffs pray for compensatory damages and punitive damages as allowed by law.

## JURY DEMAND

150.    Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, as follows:

1.    Compensatory damages in the amount of $15,000,000, as allowed by law;

2.    Nominal damages on all counts;

3.    Punitive damages in the amount of $10,000,000, as allowed by law;

4.    Costs of suit herein incurred;

5.    Attorneys' fees pursuant to applicable law; and

6.    For such other and further relief as this Court deems just and proper.

Date: May 27, 2008

Sanford Wittels & Heisler, LLP

27

By: _____ /by ΔM

Steven L. Wittels

Sanford Wittels & Heisler, LLP
950 Third Ave, 10th Floor
New York, New York 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948
swittels@nydclaw.com
*Pending Pro Hac Vice Admission*

*Lead Counsel for Plaintiffs*

By: _____ /by ΔM

Tanya Brannan

Law Office of Tanya Brannan
419 Orchard Street
Santa Rosa, California 95402
(707) 887-0865
brannanlaw@comcast.net

*Co-Counsel for Plaintiffs*

Law Offices of Grant Morris
1666 Connecticut Avenue NW
Suite 310
Washington, DC 20009
Telephone: (202) 742-7777
Facsimile: (202) 742-7776
grantmorris@grantmorrislaw.com
*Pending Pro Hac Vice Admission*

E-Filing

**CIVIL COVER SHEET** EDL

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**
VALERIE GEORGE, as Administrator and Personal Representative of THE ESTATE OF RYAN GEORGE; VALERIE GEORGE and TAJMAH BEAUCHAMP, as Legal Representatives for Jaida George and Ryan George, Jr; VALERIE GEORGE, Individually; DONALD GEORGE; and TAJMAH BEAUCHAMP,

**DEFENDANTS**
SONOMA COUNTY SHERIFF'S DEPARTMENT; BILL COGBILL; COUNTY OF SONOMA; CALIFORNIA FORENSIC MEDICAL GROUP, INC; MICHAEL E. DAGEY, R.N.; ELIZABETH KAISER; JAMES LUDERS, M.D.; LAURA RODRIGUEZ; SUTTER HEALTH; SUTTER MEDICAL CENTER OF SANTA ROSA; and DOES 1 through 25, inclusive,

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Sonoma County, CA

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.   Sonoma County, CA

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Sanford Wittels & Heisler, LLP,
950 Third Ave, 10th Floor
New York, NY 10022; (646) 723-2947

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent . | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

Transferred from
☐ 5 another district (specify)

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §1983
Brief description of cause:
Deliberate indifference to prisoner's serious medical needs (8th Am.) resulting in wrongful death, and related claims

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** 25,000,000    CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**    PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE
5/27/2008

SIGNATURE OF ATTORNEY OF RECORD
/by AM    Steven L. Wittels