United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE GEORGE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SONOMA COUNTY SHERIFF'S DEPT., et al.,<br><br>Defendants.<br>_____/ | No. C-08-02675 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS SONOMA COUNTY SHERIFF'S DEPARTMENT, ET AL. MOTION TO DISMISS; GRANTING DEFENDANTS CALIFORNIA FORENSIC MEDICAL GROUP, ET AL. MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS SUTTER HEALTH, ET AL. MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION FOR ORDER THAT THE CLAIM WAS TIMELY; AND DENYING AS MOOT PLAINTIFFS' ALTERNATIVE PETITION FOR ORDER RELIEVING PETITIONERS FROM CALIFORNIA GOVERNMENT CODE § 945.4** |

This action arises from the death of Ryan George on July 9, 2007 while he was in the custody of the Sonoma County Sheriff's Department, and after he had received allegedly inadequate medical care from medical staff at the Sonoma County jail and at Sutter Medical Center of Santa Rosa. Before the Court are: (1) Defendants Sonoma County Sheriff's Department, Bill Cogbill and the County of Sonoma's ("the County Defendants") Motion to Dismiss; (2) Defendants California Forensic Medical Group, James Luder and Michael Dagey's ("the CFMG Defendants") Motion to Dismiss; (3) Defendants Sutter Health and Sutter Medical Center of Santa Rosa's ("the Sutter Defendants") Motion to Dismiss; and (4) Plaintiffs' Motion for an Order that the Notice of Claim was Timely, or in the alternative, Petition for an Order under California Government Code § 946.6 Relieving Them from Untimely Filing of Claim. On December 16, 2008, the Court held a hearing on these motions. For the reasons stated at the hearing and below, the Court issues the following Order.

**Relevant Facts**

On May 31, 2007, Ryan George was taken into custody by the Sheriff's Department. Compl. ¶ 23. He informed the jail that he had a history of sickle cell anemia, but that he was not experiencing any symptoms. Compl. ¶ 23. On June 28, 2007, Ryan experienced the onset of an acute sickle cell anemia crisis. Compl. ¶ 28. Plaintiffs allege that Ryan was not provided with appropriate medical care while in the jail's infirmary from June 28, 2007 through July 1, 2007 by Defendant California Forensic Medical Group, Dr. Luders and Nurse Dagey. Compl. ¶ 32-38. Plaintiffs allege that they attempted to contact jail officials during this time to get appropriate medical care for Ryan, but that the jail personnel were unresponsive or rude. Id.

On July 1, 2007, Ryan was transferred to Sutter Medical Center, and into the care of Drs. Hard, Flinders, Jarian and Matel. Compl. ¶ 39. By that time, Ryan was exhibiting an altered mental state, his arms were rigid and he was incontinent. Compl. ¶ 41. His condition continued to deteriorate. Compl. ¶¶ 42-43, 46-50. Family members continued to alert medical staff to Plaintiff's sickle cell anemia, but the doctors were focused on Plaintiff's altered mental state. Compl. ¶¶ 42-50. One doctor at Sutter, Dr. Matheson, urged that Ryan be transferred to Kaiser where he had been treated previously because of Sutter's limited ability to treat Plaintiff's sickle cell anemia. Compl.¶ 49. He was not transferred, and continued to get worse as his family members pleaded for better treatment. Compl. ¶¶ 51-56.

On July 3, 2007, Ryan was transferred back to the jail even though he was nonresponsive, incontinent and bed-ridden. Compl. ¶ 56. He was suspected of malingering. Compl. ¶ 56. There were no special instructions for his discharge; he was simply given pain medication and encouraged to drink fluids. Compl. ¶ 57.

Ryan was transferred to the jail's infirmary. Compl. ¶ 58. He remained incontinent, and required four men to put him in his bed. Compl. ¶ 58. He was not given intravenous fluids. Compl. ¶ 58. He was still unable to walk, and was largely unable to move. Compl. ¶ 68. A note in his chart for July 4, 2007 indicates that he was lying in his own urine because the catheter had leaked and he had not eaten for many hours. Compl. ¶ 62. His family tried to visit him during this time while they were trying to get him appropriate medical treatment, but were denied visits. Compl. ¶

63-67. Guards taunted him for malingering. Compl. ¶ 70. Ryan died on July 9, 2007, alone in his cell naked on a rubber bed sheet. Compl. ¶¶ 71-72.

**Legal Standard for Motion to Dismiss**

A motion to dismiss is appropriate when the plaintiff's allegations fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2008). A court should not grant dismissal unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In analyzing a motion to dismiss, the court must accept as true all allegations of material facts set forth in the complaint, and draw reasonable inferences in the light most favorable to the plaintiff. Pareto v. Fed. Deposit Ins. Co., 139 F.3d 696, 699 (9th Cir. 1998). Dismissal without leave to amend is improper, unless no amendment could possibly cure the pleading's deficiencies. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998).

**Discussion**

**1.   The Sutter Defendants' Motion to Dismiss is granted in part and denied in part**

The Sutter Defendants seek dismissal of the First, Third, Fifth and Sixteenth claims, and seek to strike the punitive damages claims as to the Fifth, Eighth, Tenth, Eleventh, Thirteenth, and Eighteenth claims. For the reasons stated below, Defendants' motion to dismiss is granted in part with leave to amend and denied in part.

   **A.   First claim for deliberate indifference to serious medical need**

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This may be shown in the medical context by "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105-06. Further, deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect. . . . While poor

3

1  medical treatment will at a certain point rise to the level of constitutional violation, mere
2  malpractice, or even gross negligence, does not suffice." Wood v. Housewright, 900 F.2d 1332,
3  1334 (9th Cir. 1990) (claims of deliberate indifference by prison doctors).  A difference in medical
4  opinion does not constitute deliberate indifference.  Sanchez .v Vild, 891 F.2d 240, 242 (9th Cir.
5  1989).

6        Here, although the standard for proving deliberate indifference is high, the complaint
7  contains allegations sufficient to state a claim for deliberate indifference and survive a motion to
8  dismiss.  Specifically, Plaintiffs allege that when Ryan was taken to the Sutter emergency room, he
9  exhibited a significantly altered level of consciousness, reacting to pain, but not communicating or
10 responding to commands.  Compl. ¶ 41.  His arms were rigid and he was incontinent.  Compl. ¶ 41.
11 His condition did not improve and he was admitted to the hospital.  Compl. ¶ 42.  Plaintiffs allege
12 that a Sutter doctor suggested that Sutter had limited capacity to treat the sickle cell anemia and
13 implied that Ryan might die as a consequence of the inadequate treatment he was receiving at Sutter.
14 Compl. ¶ 49.  Ryan laid in bed without purposeful movement, was unresponsive to verbal
15 commands, his eyes did not follow objects, and he was at risk for seizures.  Compl. ¶ 42.  Although
16 Sutter doctors noted Ryan's sickle cell history, Ryan was treated for the altered mental status.
17 Compl. ¶ 43.  A Sutter nurse's report states that Ryan's condition remained unchanged, and that he
18 had occasional eye opening and minimal leg movement.  Compl. ¶ 46.  He was later found to have
19 very limited sensory perception and mobility, and was still bedridden.  Compl. ¶ 46.  Sutter doctors
20 allegedly failed to give Ryan pain medication because he could not ask for it, even though he was
21 unresponsive.  Compl. ¶ 48, 50.  At the hospital, Ryan's family were permitted to visit him for ten
22 minutes, during which they found him unresponsive and unable to recognize them, with his eyes
23 glazed over and his mouth white and encrusted.  Compl. ¶ 47.  The day before he was released, he
24 was described as lethargic, distant and was unable to follows cues or commands.  Compl. ¶ 52.  His
25 eyes were described as having a glazed look.  Compl. ¶ 52.  Sutter Defendants released Ryan back to
26 the jail even though he was uncommunicative, incontinent and bed-ridden, although he showed
27 slight improvement when his finger was pinched.  Compl. ¶ 56, 50.  Sutter doctors did not put any
28 restrictions on Ryan's activities once back at the jail.  Compl. ¶ 57.  Sutter improperly released Ryan

4

even though he was in critical condition. Compl. ¶ 88.

### B. Third claim for deprivation of life without due process and sixteenth claim for due process deprivation of familial relationships

The due process clause is not implicated by negligence or even gross negligence, but by deliberate indifference. See Daniels v. Williams, 474 U.S. 327, 328 (1986); L.W. v. Grubbs, 92 F.2d 894, 896-97, 900 (9th Cir. 1986). In support of their due process claims, Plaintiffs allege as described above, that Ryan received inadequate treatment, that Sutter was ill-equipped to handle his illness, that Sutter Defendants restricted the family access to Ryan, and that Ryan was released while still in a noncommunicative state.

Defendants argue that Plaintiffs have not alleged that Sutter was deliberately indifferent to Ryan's life and familial relationships. They argue that the allegations show that Sutter endeavored to preserve his life and familial relationships because Ryan was examined by two doctors in the emergency room, underwent procedures, received treatment over the course of two days, improved at the hospital and was released with instructions for fluid and doctor follow-up. Further, Sutter argues that there are no allegations that, for example, the discontinuation of intravenous fluids and oxygen was not a reasonable treatment. Defendants, however, have cited no authority that the complaint must state such allegations.

Here, Plaintiffs have made serious allegations against the Sutter Defendants regarding Ryan's treatment. Those allegations state a plausible claim for due process violations. Accordingly, Defendants' motion to dismiss the third and sixteenth claims is denied.

### C. Fifth claim for negligence

Defendants argue that the fifth claim for negligence should be dismissed because it is not only improper, but also is subsumed within Plaintiff's eighth claim for medical malpractice. The California Supreme Court has stated:

> "[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." (Rest.2d Torts, § 282.) Thus, as a general proposition one "is required to exercise the care that a person of ordinary prudence would exercise under the circumstances." (Polk v. City of Los Angeles (1945) 26 Cal.2d 519, 525 [159 P.2d 931]; Rowland v. Christian (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see Civ. Code, § 1714, subd. (a).) Because application of this principle is inherently situational, the amount of care deemed reasonable in any particular case will vary, while at the same time the

5

> standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances. (Dalzell v. County of Los Angeles (1948) 88 Cal.App.2d 271, 276 [198 P.2d 554]; Lasater v. Oakland Scavenger Co. (1945) 71 Cal.App.2d 217, 221 [162 P.2d 486].) "'There are no "degrees" of care, as a matter of law; there are only different amounts of care, as a matter of fact ....' [Citation.]" (Donnelly v. Southern Pacific Co. (1941) 18 Cal.2d 863, 871 [118 P.2d 465].) . . . With respect to professionals, their specialized education and training do not serve to impose an increased duty of care but rather are considered additional "circumstances" relevant to an overall assessment of what constitutes "ordinary prudence" in a particular situation.

Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal.4th 992, 997-98 (1994). In particular, the Flowers Court determined that the Court of Appeal had erred in finding that the pleading in that case was broad enough to state a claim for ordinary negligence as well as professional negligence: "This analysis necessarily implies that the same factual predicate can give rise to two independent obligations to exercise due care according to two different standards. But this is a legal impossibility: a defendant has only *one* duty, measured by *one* standard of care, under any given circumstances." Flowers, 8 Cal.4th at 1000 (emphasis in original).

Flowers is dispositive in this case. Both the fifth and eighth claims allege professional negligence in that they arise out of Defendants' professional relationship with Ryan. That the duty owed to Ryan under the fifth claim regarding the discharge of Ryan from Defendants' care may not require expert testimony is not relevant. See Flowers, 8 Cal.4th at 1000 ("In drawing the distinction between ordinary and professional negligence, the court in Gopaul observed that '[t]he need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all.' In other words, it found that the circumstances did not require expert testimony to establish the appropriate standard of care. This reasoning confuses the manner of proof by which negligence can or must be established and the character of the negligence itself, which does not depend upon any related evidentiary requirements.") (internal citations omitted). At the hearing, Plaintiffs agreed that the complaint should be amended to contain only one claim of professional negligence encompassing all allegedly negligent conduct by the Sutter Defendants. Accordingly, Defendants' motion to dismiss the fifth claim is granted with leave to amend.

### D. Punitive damages claims

Defendants argue that the prayers for punitive damages should be stricken as "redundant, immaterial, impertinent or scandalous matter" under Federal Rule of Civil Procedure 12(f).

Defendants argue that Plaintiff has not made a showing of fraud, malice or oppression that would justify punitive damages under California Civil Code § 3294, which states:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

See also Henry v. Lehman Commer. Paper, Inc., 471 F.3d 977, 998 (9th Cir. 2006) ("Under California law, punitive damages are appropriate where a plaintiff establishes by clear and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression or (3) malice. According to the definitions provided in section 3294(c), a plaintiff may not recover punitive damages unless the defendant acted with intent or engaged in 'despicable conduct.' 'The adjective "despicable" connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.'") (internal citation omitted); Jackson v. East Bay Hospital, 980 F. Supp. 1341, 1353-54 (1997) ("As set forth above, determination of whether to apply a federal or state law to a pendent state claim in federal court depends upon classification of the state law as procedural or substantive. The court considers California Civil Code section 3294 to be a substantive law, as it establishes a right to recover punitive damages, and lists the essential elements, rather than laying out a procedural requirement.").

Plaintiffs, however, have made serious allegations against the Sutter Defendants that, if true, would support a claim for punitive damages. Specifically, Plaintiffs allege that Defendants acted with conscious disregard for Ryan's life and safety and for the emotional well-being of his family. Compl. ¶ 77. They also allege that Defendants intentionally misrepresented or concealed essential facts about Ryan's condition that caused injury. Compl. ¶ 77. They also allege that the callous disregard of Ryan's obvious known serious medical needs is shown by the transfer back to the jail despite Ryan's critical condition. Compl. ¶ 88. Defendants allegedly callously allowed Ryan to degenerate, suffer and die instead of treating him. Compl. ¶ 95. Defendants are also alleged to have failed to attend to Ryan's basic needs. Compl. ¶ 149. Accordingly, because Plaintiffs have alleged sufficient facts regarding punitive damages at this stage of the litigation, Defendants' motion to strike is denied.

**2.     The Sonoma County Defendant's Motion to Dismiss is granted in part and denied in part, the CFMG Defendants' Motion to Dismiss is granted, Plaintiffs' Motion for Order the Notice of Claim was Timely is granted and Plaintiffs' alternative Petition for Relief from Untimely Filing of Claim is denied as moot.**

The County Defendants seek dismissal of all claims against Sheriff Cogbill, all claims against the County under Monell v. Department of Social Servs., 436 U.S. 658 (1978), all state law claims against all County Defendants, and all claims brought by Ms. Beauchamp. The CFMG Defendants seek dismissal of all claims brought by Ms. Beauchamp. To counter the County Defendants' argument that dismissal is appropriate because Plaintiffs failed to timely present a claim to the County, Plaintiffs filed a motion for order that the claim presentation was timely, or alternatively, for relief from the claim presentation requirement.

**A.     Claims against Sheriff Cogbill**

The County Defendants seek dismissal of all claims against Sheriff Cogbill, arguing that there are no allegations that Sheriff Cogbill was aware of Ryan's medical needs or had any involvement in making any decision regarding his medical care. Under § 1983, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (approving jury instruction that police chief would be "liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." Supervisory liability is imposed against a supervisory official in his individual capacity for his "own culpable action or inaction in the training, supervision, or control of his subordinates," for his "'acquiesce [nce] in the constitutional deprivations of which [the] complaint is made'"; or for conduct that showed a " 'reckless or callous indifference to the rights of others. ") (internal citations omitted). The causal connection can be shown by authorizing or approving practices that cause injury (see Redman, 942 F.2d at 1147-48); by inadequate training (see Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183); by acquiescence in longstanding policy (see Los Angeles Police Protective

8

League v. Gates, 907 F.2d 879, 894 (9th Cir. 1990)); or by condoning actions of subordinates (see Blankenhorn v. City of Orange, 485 F.3d 463, 485-86 (9th Cir. 2007)).

Under state law, ". . . a public employee is not liable for an injury caused by the act or omission of another person," but a public employee may be liable for "injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov't Code § 820.8. Individual liability may be established by negligent training, retention, supervision or control of employees or agents, approval in the actions of subordinates, actual awareness of an unlawful custom or practice, or responsibility for developing and promoting policies causing the alleged injury. See, e.g., Khatib v. County of Orange, 2008 WL 822562 at *13 (C.D. Cal. Mar. 26, 2008). However, liability cannot be based on an allegation that an individual merely ratified a subordinate's decision. See Williams v. City of Oakland, 2008 WL 268985 (N.D. Cal. 2008) ("A policymaker's deferential review of a subordinate's discretionary decision is not the basis for Section 1983 liability, unless a subordinate's decision is cast in the form of a policy statement and expressly approved by a policymaker or if a series of decisions by a subordinate official show a custom of which a supervisor must have been aware.") (citing Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir.1992)).

Plaintiffs allege, however, that by failing to "properly screen, train, supervise and/or discipline" personnel, and by "authorizing, ratifying and/or condoning the acts and omissions" of other Defendants, Sheriff Cogbill subjected Ryan to unnecessary pain and injury resulting in his death in violation of his constitutional rights. Compl. ¶¶ 85, 86. Further, the complaint alleges that the conduct of which Plaintiffs complain was done pursuant to "customs and policies authorized, condoned, ratified and carried out by all Defendants that resulted in delayed and denied medical care for the purposes of saving money at the risk of inmates' health, and/or for inflicting physical and mental abuse on inmates as retribution in furtherance of a policy of misuse of power over inmates incarcerated in Sonoma County." Compl. ¶ 87. These allegations regarding a causal connection between Sheriff Cogbill's conduct and Plaintiffs' injuries are sufficient to survive a motion to dismiss for purposes of both the federal and state law claims. Accordingly, the County Defendants' Motion to Dismiss claims against Sheriff Cogbill is denied.

**B.     Federal claims against the County**

The County Defendants argue that Plaintiffs have failed to state sufficient facts to support claims against the County pursuant to Monell v. Department of Social Servs., 436 U.S. 658 (1978). Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. Monell, 436 U.S. at 690. However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Here, Plaintiff has made several allegations regarding County policies that Plaintiffs allege caused a violation of Ryan's constitutional rights. Most notably, Plaintiffs allege that:

> Upon information and belief, despite actual or constructive knowledge of the inadequacy of its health services, including numerous avoidable injuries and inmate deaths, Defendants retained CFMG as the Jail's medical provider and failed to sufficiently staff and equip its medical facilities. Moreover, Defendants enacted, enforced, and/or ratified a custom, practice, or policy of declining to refer inmates for outside medical care in all but the most extreme circumstances, and requiring that outside care be provided at Sutter even for those conditions – such as Ryan George's sickle-cell crisis – that it knew or should have known Sutter was unequipped to handle. In addition, Defendants interfered with the independent medical judgment of Sutter and its personnel, urging or requiring that inmates such as Mr. George be returned to the Jail as soon as possible, even where they remained in need of hospital treatment.

Compl. ¶ 117. Plaintiffs also allege that the conduct contained in the complaint was carried out:

> pursuant to customs and policies authorized, condoned, ratified and carried out by all Defendants that resulted in delayed and denied medical care for the purposes of saving money at the risk of inmates' health, and/or for inflicting physical and mental abuse on inmates as retribution in furtherance of a policy of misuse of power over inmates incarcerated in Sonoma County.

Compl. ¶ 87. These allegations are sufficient to survive a motion to dismiss based on Monell. Accordingly, the County Defendants' Motion to Dismiss the federal claims against the County based on Monell is denied.

**C.     State claims against the County**

The County Defendants argue that Plaintiffs' state law claims are barred as untimely by California's Tort Claims Act. The Tort Claims Act requires presentation of a timely claim to a

10

public entity prior to commencing a lawsuit. Cal. Gov't Code § 991.2; § 950.2. A claim must be presented within six months of the accrual of the action. Cal. Gov't Code § 911.2(a) ("A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action."). In this case, Plaintiffs' allege the following regarding their compliance with the claim presentation requirement.

On December 18, 2007, within six months of Ryan's death on July 9, 2007, Plaintiffs presented a written claim to County of Sonoma naming Valerie George, Ryan's mother, as the sole claimant. Compl. ¶ 79; Chadborne Decl. Ex. A.[1] The damages described in the claim are those suffered by Ryan, and not specifically by claimant Valerie George herself. On February 20, 2008, after the six-month deadline, Plaintiffs filed an Amended Claim to "clarify the identity of the claimants." Compl. ¶ 79; Chadborne Decl. Ex. B. This amended claim identified all Plaintiffs: Valerie George in her individual and representative capacity; Donald George (Ryan's father) in his individual capacity; and Tajmah Beauchamp (Ryan's fiancé and mother of his two infant children) in her individual capacity. Chadborne Decl. Ex. B. The amended claim also added allegations of damages as to all claimants, including claims of wrongful death and emotional distress. Id.

On April 4, 2008, the County rejected Valerie George's individual claim because she did not have standing to bring the survivor claims that were alleged in her claim. Compl. ¶ 80; Chadborne Decl. Ex. C; see also Cal. Civil Proc. Code § 377.30; Rogers v. Bank of America, 140 Cal.App.2d 228 (1956) (survivor claims belong to decedent's estate and must be brought by executor or administrator of estate). Also on that date, the County returned the claims as to all claimants as untimely. Compl. ¶ 80; Chadborne Decl. Ex. D, E, F, G.

On May 8, 2008, Plaintiffs applied to the County for leave to file a late claim on the grounds that the failure to file within the statutory six-month deadline was due to inadvertence or excusable neglect, and that there are minor children involved. Compl. ¶ 81; Cal. Gov't Code § 911.4 ("(a) When a claim that is required by Section 911.2 to be presented not later than six months after the

---

[1] The Court may consider the documents in the Chadborne declaration as described in this Order because Plaintiffs rely on the documents on the complaint. See Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994).

11

accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim. (b) The application shall be presented to the public entity as provided in Article 2 (commencing with Section 915) within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim."); § 911.6 ("(b) The board shall grant the application where one or more of the following is applicable: (1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2. (2) The person who sustained the alleged injury, damage or loss was a minor during all of the time specified in Section 911.2 for the presentation of the claim."). On June 20, 2008, the County denied the application to file a late claim. Compl. ¶ 81; Chadborne Decl. Ex. I, J, K, L.

After Defendants filed their motion to dismiss, Plaintiffs filed a motion in this Court for order that the claims were timely, or alternatively, relieving them pursuant to California Government Code § 946.6 from the claim presentation requirement contained in California Government Code § 945.4. First, Plaintiffs argue that the claims were timely based on the doctrine of substantial compliance. See Carlino v. Los Angeles County Flood Control Dist., 13 Cal.Rptr. 2d 437, 440 (1992) ("Substantial compliance with the claims filing statutes will suffice."); City of San Jose v. Superior Court, 12 Cal.3d 447, 456-57 (1974) (same). As the California appellate court recently stated:

> The purpose of requiring a claim is "'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' [Citation.]" (Phillips v. Desert Hospital Dist. (1989) 49 Cal.3d 699, 705, 263 Cal.Rptr. 119, 780 P.2d 349.) Accordingly, a claim under Government Code section 910 is sufficient if (1) there is " some compliance with all of the statutory requirements"; and (2) the claim discloses sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate. (San Jose, supra, 12 Cal.3d at pp. 456-457, 115 Cal.Rptr. 797, 525 P.2d 701.) The latter inquiry is known as the substantial compliance test. (Ibid.)

County of Los Angeles v. Superior Court, 159 Cal.App.4th 353, 360 (2008).

However, the doctrine of substantial compliance can only be invoked when a timely claim was initially submitted. See Stromberg, Inc. v. Los Angeles County Flood Control Dist., 270

Cal.Pp.2d 759, 762-63 (1969) ("Substantial compliance cannot be predicated on no compliance."). In this case, Valerie George in her individual capacity filed a timely claim, and that claim only described damages to Ryan and did not mention that any children were involved. Defendants do not contest that Valerie George's December 2007 claim provided timely notice of a survival claim because the claim described damages to Ryan before his death. Cf. Nelson v. County of Los Angeles, 113 Cal.App.4th 783, 797 (2003) (denying survivorship claim where there was no identification of damages recoverable by the estate, e.g., expenses or suffering before death). Defendants argue, however, that the December 2007 claim did not provide notice as to any wrongful death action or any claims by other claimants. Because any wrongful death action would accrue to Ryan's children under California Code of Civil Procedure § 377.60, and not to Valerie George, and there is no mention of any children in the December 2007 claim, there was no notice of a wrongful death claim based on a substantial compliance theory. See Chavez v. Carpenter, 91 Cal.App.4th 1433, 1440-42 (2001) ("But where a decedent leaves issue, 'his parents would not be his heirs at all [citations] and therefore not entitled to maintain this [wrongful death] action at all.'"). Further, the December 2007 claim does not encompass claims by other Plaintiffs.

Alternatively, Plaintiffs argue that the December 2007 claim constitutes a "claim as presented" under California Government Code § 910.8, and that because the County failed to notify Plaintiffs of any deficiencies in that claim, the County has waived all arguments that the December 2007 claim did not effectively raise all claims. See California Government Code § 910.8 ("If, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. The notice shall be given in the manner prescribed by Section 915.4. The board may not take action on the claim for a period of 15 days after the notice is given."); see also Alliance Financial v. CCSF, 64 Cal.App.4th 635, 643-44 (1998) ("A "claim as presented" is a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2, but nonetheless puts the public entity on notice that the claimant is

13

attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved. A "claim as presented" triggers a duty on the part of the governmental entity to notify the claimant of the defects or omissions in the claim. A failure to notify the claimant of the deficiencies in a "claim as presented" waives any defense as to its sufficiency. (citations omitted).").

Defendants argue that the December 2007 claim did not put the County on notice that any Plaintiff other than Valerie George had a claim. And where the defect in the claim is the failure to present any claim at all, the County was not obligated to notify a potential plaintiff of any insufficiency. See Stromberg, 270 Cal.App.2d at 763 ("Likewise, if in fact no claim was filed, plaintiff cannot assert a duty on the part of the county to notify it of "insufficiency of claim" under sections 910.8 and 911, Government Code, or of its failure to file a claim or advise it to do so."). Further, actual knowledge of this case from other sources such as the media does not relieve a plaintiff from complying with the claim presentment requirement. See Department of Water & Power v. Superior Court, 82 Cal.App.4th 1288, 1297 (2000) (even where the entity had equal access to the police report, which was equally available to the claimant, the claimant had to file a claim after due diligence as to potential defendants). Although the only claimant on the December 2007 claim was Valerie George as an individual, the claim itself described damages to Ryan that would support a survival claim, so Defendants were on notice that Valerie George intended to assert representative survival claims, and that she suffered emotional damages herself as a hapless witness to her son's suffering based on the allegations in the claim to support a claim in her individual capacity. Cf. Nelson v. County of Los Angeles, 113 Cal.App.4th 783, 796 (2003) (resolving survival claims against a mother who submitted a claim on her own behalf and did not mention any damage by her deceased son that could have been construed as survivor claims: "The problem here is not that Mrs. Nelson's claim was defective, but that no claim at all was filed by or on behalf of Dwayne's estate."). Therefore, the December 2007 claim constitutes a claim as presented that put Defendants on notice that Valerie George was prosecuting a representative survival claim as well as her individual claim. Under section 910.8, therefore, Defendants waived any defense as to the sufficiency of the claim by failing to notify the claimant of the deficiency.

More importantly, the February 2008 amended claim relates back to the original claim and

14

1 therefore is considered part of the original claim because the amended claim was submitted before
2 the County took final action on the claims in April 2008. See Cal. Gov't Code § 910.6(a) ("A claim
3 may be amended at any time before the expiration of the period designated in Section 911.2 or
4 before final action thereon is taken by the board, whichever is later, if the claim as amended relates
5 to the same transaction or occurrence which gave rise to the original claim. The amendment shall be
6 considered a part of the original claim for all purposes."). Defendants cite no authority for their
7 argument that an amended claim cannot add new parties or claims. Further, such an argument is
8 contrary to section 910.6, which only requires that the amended claim relate to the same transaction
9 or occurrence which gave rise to the original claim and does not rule out additional parties or claims.
10 Accordingly, the February 2008 claim, which contained essentially the same narrative of the events
11 as included in the December 2007 claim, related back to the December 2007 claim pursuant to
12 section 910.6 and is therefore timely.[2]

13 The County Defendants' Motion to Dismiss is therefore denied as to Plaintiffs' state law
14 claims. Accordingly, Plaintiffs' motion for order that the claims were timely is granted. Plaintiffs'
15 alternative petition for relief from the claim presentation requirement is denied as moot. Therefore,
16 the Court need not address the question of whether it has jurisdiction over the petition in the first
17 instance, which appears to be the subject of a split of authority. Compare Luers v. Smith, 941 F.
18 Supp. 105, 107-08 (C.D. Cal. 1996) ("Furthermore, assuming arguendo that section 946.6 could
19 establish jurisdiction over such a petition in federal court, it does not appear that the provision in
20 section 946.6 that the 'proper court for filing the petition' is 'a court which would be a competent
21 court for the trial of an action on the cause of action to which the claim relates and which is located
22 in a county or judicial district which would be a proper place for the trial of the action,' was
23 intended to include a federal court, as well as a state court, as one of the 'proper' courts.") and
24 Hernandez v. McClanahan, 996 F. Supp. 975, 977 (N.D. Cal. 1998) ("This court is not the 'proper
25 court' to hear Hernandez's section 946.6 petition."), with Perez v. City of Escondido, 165 F. Supp.
26 2d 1111 (S.D. Cal. 2001) ("The approach adopted by the courts in Luers and Hernandez, finding that

---

[2] Therefore, the Court need not address Plaintiffs' alternative arguments that the claims in this case did not accrue until Valerie George was appointed as the administrator of Ryan's estate or until Ryan Jr. was born on August 28, 2007.

15

a federal court is without jurisdiction to make such a determination, finds no basis in the language of section 946.6. Nothing in the language of section 946.6 precludes a federal court from adjudicating the merits of a petition for relief.").

### D.    Claims by Ms. Beauchamp

The County Defendants as well as the CFMG Defendants move to dismiss all claims brought by Ms. Beauchamp, Ryan's fiancé, on the ground that she lacks standing. Ms. Beauchamp alleges that she was deprived of her constitutional right to familial association, society and companionship in violation of the Fourteenth Amendment. Compl. ¶ 170.

The Ninth Circuit has rejected attempts to extend standing to bring a constitutional claim based on familial relationships beyond the husband-wife and parent-child context. See Ward v. San Jose, 967 F.2d 280, 284 (9th Cir. 1991) (siblings do not have standing to assert § 1983 claims) (citing Bell v. Milwaukee, 746 F.2d 1205, 1247 (7th Cir. 1984) ("Moreover, if we were to hold that the federal Constitution entitles the siblings to recover for loss of society and companionship, there could be no principled way of limiting such a holding to the immediate family or perhaps even to blood relationships. Obviously many human relationships stem from the 'emotional attachments that derive from the intimacy of daily association,' but we are unwilling to attach constitutional significance to such attachments outside the closely guarded parent-child relationship.")); see also Palacios v. City of Oakland, 970 F. Supp. 732, 745 (N.D. Cal. 1997) (uncle and half-sisters lack standing); Rentz v. Spokane County, 438 F. Supp. 2d 1252 (E.D. Wash. 2006) (siblings lack standing).

Plaintiffs argue that Ms. Beauchamp's relationship with Ryan was of such a close nature that she should have standing for purposes of this constitutional claim. The Court does not doubt this closeness. However, Plaintiffs have cited no cases in which a fiancé has had standing for this kind of claim. Plaintiffs' reliance on Roberts v. United States Jaycees, 468 U.S. 609, 618-20 (1984) and its progeny is misplaced. In Roberts, the Court addressed the types of relationships that should be protected against unwarranted state interference, not the types of relationships that would confer standing to bring an affirmative constitutional claim for damages:

> Without precisely identifying every consideration that may underlie this type of constitutional protection, we have noted that certain kinds of personal bonds have

16

> played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. . . . Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. *Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty. . . .* The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family-marriage, . . .childbirth, . . . the raising and education of children, . . . and cohabitation with one's relatives, . . . .

Roberts, 468 U.S. at 618-20 (emphasis added); see also IDK, Inc. v. Clark County, 836 F.2d 1185, 1193 (9th Cir. 1988) (describing various non-marital relationships that would be entitled to a high degree of protection from governmental intrusion). Accordingly, the County Defendants' and the CFMG Defendants' Motions to Dismiss claims brought by Ms. Beauchamp are granted.

**Conclusion**

Accordingly, the County Defendants' Motion to Dismiss is granted in part without leave to amend as to the claims by Ms. Beauchamp, and denied in part. The CFMG Defendants' Motion to Dismiss is granted without leave to amend as to the claims by Ms. Beauchamp. The Sutter Defendants' Motion to Dismiss is granted in part with leave to amend the professional negligence claims, and denied in part. Plaintiffs' Motion for Order that the Claim was Timely is granted. Plaintiffs' alternative Petition for Order Relieving Them from Untimely Filing of Claim is denied as moot. The amended complaint shall be filed no later than January 20, 2009.

The hearing on Defendant Matel's Motion to Dismiss, Defendant Flinders's Motion to Dismiss and Defendant Janian's Motion to Dismiss and Motion to Strike is set for February 10, 2009 at 9:00 a.m. The parties shall meet and confer regarding whether the issues in the motions brought by Defendants Matel, Flinders and Janian are the same or similar to those addressed in this Order such that those issues would be decided in the same manner, and whether the issues raised in the motions can be narrowed accordingly. A further case management conference is also set for

//
//
//
//

17

//

February 10, 2009 at 9:00 a.m. The parties shall file a joint case management conference statement no later than February 3, 2009.

**IT IS SO ORDERED.**

Dated: December 23, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge