IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE GEORGE, et al., | No. C-08-02675 EDL |
| Plaintiffs, | **ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS JANIAN'S, MATEL'S AND FLINDERS'S MOTIONS TO DISMISS** |
| v. | |
| SONOMA COUNTY SHERIFF'S DEPT., et al., | |
| Defendants. | |

This action arises from the death of Ryan George on July 9, 2007 while he was in the custody of the Sonoma County Sheriff's Department, and after he had received allegedly inadequate medical care from medical staff at the Sonoma County jail and at Sutter Medical Center of Santa Rosa. On December 23, 2008, the Court issued a ruling on Motions to Dismiss brought by Defendants Sonoma County Sheriff's Department, Bill Cogbill and the County of Sonoma's ("the County Defendants"), Defendants California Forensic Medical Group, James Luder and Michael Dagey's ("the CFMG Defendants") and Defendants Sutter Health and Sutter Medical Center of Santa Rosa's ("the Sutter Defendants"). Plaintiffs filed their second amended complaint on January 20, 2009. Now before the Court are: (1) Defendant Norick Janian's Motion to Dismiss; (2) Defendant Joseph Matel's Motion to Dismiss; and (3) Defendant Richard Flinders's Motion to Dismiss. Doctors Janian, Matel and Flinders are physicians at Sutter Medical Center who participated in Ryan's medical care in July 2007. On February 10, 2009, the Court held a hearing on these motions. For the reasons stated at the hearing and below, the Court issues the following Order.

**Relevant Facts**

On May 31, 2007, Ryan George was taken into custody by the Sheriff's Department to serve his sentence for a felony conviction for inflicting corporeal injury on a spouse/co-inhabitant. Sec. Am. Compl. ¶ 23. He informed the jail that he had a history of sickle cell anemia, but that he was not experiencing any symptoms. Sec. Am. Compl. ¶ 23. On June 28, 2007, Ryan experienced the onset of an acute sickle cell anemia crisis. Sec. Am. Compl. ¶ 28. Plaintiffs allege that Ryan was not provided with appropriate medical care while in the jail's infirmary from June 28, 2007 through July 1, 2007 by Defendant California Forensic Medical Group (which provides the medical care at the jail under contract with the County) and Dr. Luders and Nurse Dagey. Sec. Am. Compl. ¶¶ 32-39. Plaintiffs allege that they attempted to contact jail officials during this time to get appropriate medical care for Ryan, but the jail personnel were unresponsive or rude. Id.

On July 1, 2007, Ryan was transferred to Sutter Medical Center. Sec. Am. Compl. ¶ 39. By that time, Ryan was exhibiting an altered mental state, his arms were rigid and he was incontinent. Sec. Am. Compl. ¶ 41. His condition continued to deteriorate. Sec. Am. Compl. ¶¶ 42-43, 46-50. Family members continued to alert medical staff about the sickle cell anemia, but doctors instead focused on the diagnosis of an altered mental state. Sec. Am. Compl. ¶¶ 42-50.

While Ryan was at Sutter, Defendant Matel ordered that Ryan "must verbalize" his request for pain medication before the medication could be administered. Sec. Am. Compl. ¶ 48. Sometime on or after July 2, 2007, Plaintiffs allege that Defendant Matel called Valerie George and stated that Ryan "was still in poor physical condition - basically the same, mostly unresponsive, but showed slight improvement in that he moved his finger when pinched." Sec. Am. Compl. ¶ 50. Defendant Matel reiterated that Ryan could not receive any pain medication because he was unable to ask for it. Id. Doctors Matel, Flinders and Janian continued to diagnose Ryan with an "altered mental status" and they suspected him of "malingering." Sec. Am. Compl. ¶ 56. Upon Ryan's discharge back to the jail, Defendant Matel instructed that Ryan be given pain pills and encouraged to drink fluids, and that the jail physician should follow-up within 24 hours. Sec. Am. Compl. ¶ 57. Defendant Matel did not issue any other orders, instead placing Ryan on the jail's regular diet and directing "no limits on activity, no referrals, no special care, no special supplies." Id. Plaintiffs allege that:

> Mr. George's discharge statement - written by Defendant Matel and later re-signed by Defendant Flinders - states that he was admitted to the hospital for "altered mental

2

status," following a possible seizure, as opposed to sickle-cell related complications; however, in the medical staff's judgment (including that of the neurologist Defendant Janian), he might have been experiencing a "mild" or "very slight" sickle-cell crisis.

Sec. Am. Compl. ¶ 43; see also Sec. Am. Compl. ¶ 20 ("Upon information and belief, Sutter physicians – including Defendants Flinders, Matel, and Janian – improperly diagnosed Ryan George with only a 'mild' or 'very slight,' if any, sickle-cell crisis; falsely suspected him of 'malingering;' failed to take his condition as seriously as the situation demanded; failed to provide necessary treatment; and caved to pressure from the County and Sheriff's Department to release him back to the Jail despite his critical medical status.").

On July 3, 2007, Ryan was transferred back to the jail even though he was nonresponsive, incontinent and bed-ridden. Sec. Am. Compl. ¶¶ 56, 58. Ryan continued to deteriorate at the jail. Sec. Am. Compl. ¶¶ 62-71. He died on July 9, 2007 alone in his cell. Sec. Am. Compl. ¶ 72.

**Legal Standard for Motion to Dismiss**

A motion to dismiss is appropriate when the plaintiff's allegations fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2008). A court should not grant dismissal unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In analyzing a motion to dismiss, the court must accept as true all allegations of material facts set forth in the complaint, and draw reasonable inferences in the light most favorable to the plaintiff. Pareto v. Fed. Deposit Ins. Co., 139 F.3d 696, 699 (9th Cir. 1998). Dismissal without leave to amend is improper, unless no amendment could possibly cure the pleading's deficiencies. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998).

**Discussion**

Defendants Matel and Flinders seek dismissal of the first, third, fifth, fourteenth, sixteenth, eighteenth and nineteenth claims against them, as well as the punitive damages claims and the claims brought by Plaintiff Beauchamp. Defendant Janian seeks dismissal of the first, third, fifth, twelfth, thirteenth, sixteenth and eighteenth claims against him, as well as the punitive damages claims and the claims brought by Plaintiff Beauchamp. The second amended complaint, which was

3

filed after the motions to dismiss were filed, does not assert the fifth claim against these Defendants. Therefore, Defendants' Motions to Dismiss the fifth claim are denied as moot.

**1.      First claim for violation of 42 U.S.C. § 1983 (deliberate indifference to serious medical need)**

Defendants Janian, Matel and Flinders seek dismissal of the first claim against them. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This may be shown in the medical context by "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105-06. Further, deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect. . . . While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (claims of deliberate indifference by prison doctors). A difference in medical opinion does not constitute deliberate indifference. Sanchez .v Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Here, although the standard for proving deliberate indifference is high, the second amended complaint contains allegations, as described above, that are sufficient to state a claim for deliberate indifference against Defendants Matel and Flinders when viewed in the totality of the second amended complaint. Specifically, in addition to the general allegations of Ryan's medical condition, Plaintiffs allege that Dr. Matel and Dr. Flinders both signed Ryan's discharge statement stating that Ruyan was admitted for an "altered mental status" as opposed to sickle-cell related complications. Sec. Am. Compl. ¶ 43. In addition, Plaintiffs allege that Dr. Matel ordered that Ryan must verbalize his request for pain medication before he could receive any medication. Sec. Am. Compl. ¶ 48. Further, Dr. Matel did not issue any orders upon Ryan's discharge other than to instruct that Ryan be given pain medication and encouraged to drink fluids with a follow-up appointment with the jail physician within twenty-four hours. Sec. Am. Compl. ¶ 57.

The allegations regarding Dr. Janian, however, are insufficient to withstand a motion to

4

dismiss. Dr. Janian is alleged to have assessed Ryan, and determined that he might have been experiencing a "mild" or "very slight" sickle-cell crisis. Sec. Am. Compl. ¶ 43. Plaintiffs also allege that Dr. Janian continued to diagnose Ryan with an altered mental state. Sec. Am. Compl. ¶ 56. There are no specific allegations that Dr. Janian played any part in the decision to transfer Ryan back to the jail.

Therefore, the Court denies the motions to dismiss the first claim against Defendants Matel and Flinders. Defendant Janian's motion to dismiss the first claim is granted with leave to amend to specifically state Dr. Janian's involvement.

**2.     Third claim for violation of 42 U.S.C. § 1983 (deprivation of life without due process) and Sixteenth claim for violation of 42 U.S.C. § 1983 (deprivation of familial relationships)**

Defendants Janian, Matel and Flinders seek dismissal of the third and sixteenth claims against them. The due process clause is not implicated by negligence or even gross negligence, but by deliberate indifference. See Daniels v. Williams, 474 U.S. 327, 328 (1986); L.W. v. Grubbs, 92 F.2d 894, 896-97, 900 (9th Cir. 1986). Defendants argue that there are no allegations that Defendants knew of and disregarded an excessive risk to Ryan's life or familial relationships, or that the Defendants were aware of the risk of serious harm to life or familial relationships if Ryan were to be discharged. Defendants argue that instead, the allegations show that Defendants endeavored to preserve Ryan's life and familial relationships by treating him and then discharging him after he showed improvement with instructions to jail personnel. Specifically, Defendants point to the allegation that Defendant Matel's July 3, 2007 discharge summary, which was also signed by Flinders, indicated that Ryan's level of activity had "improved somewhat." Sec. Am. Compl. ¶ 56. However, there are allegations that the day before Ryan was discharged, he was not able to open his mouth or register his fiancee's presence, and that on the day of his discharge, he did not recognize the family minister. Sec. Am. Compl. ¶¶ 53, 55. Although there is an allegation that Ryan's condition was somewhat improved on the day of his discharge, the allegations of the complaint as a whole are sufficient to state a plausible claim for deprivation of life and familial relationships with deliberate indifference against Defendants Matel and Flinders based on the allegations that the doctors released Ryan even though he was in a critical medical condition. Therefore, the Court

5

denies the motions to dismiss the third and sixteenth claims against Defendants Matel and Flinders.

With respect to Defendant Janian, Plaintiffs have not made sufficient allegations as to his role in Plaintiffs' treatment to survive a motion to dismiss the third and sixteenth claims. Therefore, Defendant Janian's motion to dismiss the third and sixteenth claims is granted with leave to amend.

**3.     Twelfth claim for violation of California Welfare and Institutions Code § 15657**

Defendant Janian seeks dismissal of the twelfth claim against him. This claim is based on the Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"). See Cal. Wel. & Inst. Code § 15600, et seq. Specifically, Plaintiffs allege that Defendants' conduct rose to the level of reckless, oppressive or malicious neglect that is actionable under Cal. Wel. & Inst. Code § 15657:

> Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, or neglect as defined in Section 15610.57, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:
>
> (a) The court shall award to the plaintiff reasonable attorney's fees and costs. The term "costs" includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article.
>
> (b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.
>
> (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer.

Cal. Wel. & Inst. Code § 15657; Sec. Am. Compl. ¶ 149.

Plaintiffs allege that Defendants' conduct constitutes neglect for purposes of § 15657. Sec. Am. Compl. ¶ 148; Cal. Wel. & Inst. Code § 15610.57 ("'Neglect' means either of the following: (1) The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise. (2) The negligent failure of an elder or dependent adult to exercise that degree of self care that a reasonable person in a like position would exercise."). Plaintiffs further allege that Ryan is a dependent adult within Defendants' care and custody. Sec. Am. Compl. ¶¶ 147, 148; Cal. Wel. & Inst. Code § 15610.23 ("'Dependent adult' includes any person between the ages of 18 and 64 years who is

6

admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code.").

The EADACPA excludes liability for acts of professional negligence. See Cal. Wel. & Inst. Code § 15657.2; Delaney v. Baker, 20 Cal.4th 23, 32 (1999). It does not apply to simple or gross negligence by health care providers. Sababin v. Superior Court, 144 Cal.App.4th 81, 88 (2006). To obtain the remedies provided by EADACPA, "'a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct.'" Sababin, 144 Cal.App.4th at 89 (quoting Delaney, 20 Cal.4th at 31). Recklessness refers "'to a subjective state of culpability greater than simple negligence, which has been described as a "deliberate disregard" of the "high degree of probability" that an injury will occur.'" Id. Oppression, fraud and malice involve intentional or conscious wrongdoing of a despicable or injurious nature. Id. The Sababin court further stated:

> Our Supreme Court teaches that neglect under the Act "refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.' [Citation.] Thus, the statutory definition of 'neglect' speaks not of the undertaking of medical services, but of the failure to provide medical care. [Citation.]" (Covenant Care, supra, 32 Cal.4th at p. 783, 11 Cal.Rptr.3d 222, 86 P.3d 290.)

Sababin, 144 Cal.App.4th at 89; see also Wolk v. Green, 516 F. Supp. 2d 1121, 1133 (N.D. Cal. 2007) ("A civil cause of action under the Elder Abuse statute is governed by the California Welfare and Institutions Code section 15657, which requires that a plaintiff demonstrate 'by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, or neglect as defined in Section 15610.57, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse . . . .'") (internal citation omitted).

Dr. Janian argues that, at most, the allegations in the complaint state a claim for negligence, which does not support a claim for elder abuse. See Sec. Am. Compl. ¶ 149 ("The actions and omissions on the part of Defendants rise to the level of reckless, oppressive or malicious neglect, independently actionable under Cal. Welfare and Institutions Code § 15657. In failing to provide care to Mr. George and to attend to his basic needs, Defendants consciously disregarded the high degree of danger to his health, safety and well being and ultimately the serious risk to his life.");

7

Delaney, 20 Cal.4th at 32 ("Section 15657.2 can therefore be read as making clear that the acts proscribed by section 15657 do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence."). The Court concludes, as stated at the hearing, that the allegations as to Defendant Janian in support of this claim are insufficient to state a claim for elder abuse because there are few specific allegations as to Dr. Janian's role in Ryan's treatment and discharge.

Dr. Janian also argues that Plaintiffs have not alleged that Dr. Janian had "care or custody" of Ryan as required by § 15610.57 to show neglect. See Wolk, 516 F. Supp. 2d at 1133 (concluding that the plaintiff had not established the "care or custody" element of the elder abuse claim where there was an attorney-client relationship between the parties). As discussed at the hearing, Plaintiffs' complaint does not adequately allege that Dr. Janian had care and custody of Ryan while he was at the hospital.

For these reasons, Defendant Janian's Motion to Dismiss is granted with leave to amend.

**4.     Thirteenth claim for negligent infliction of emotional distress**

Defendant Janian seeks dismissal of the thirteenth claim against him. He concedes that the outcome of the motion as to the thirteenth claim is dependent on the Court's ruling on the twelfth claim. Accordingly, in accordance with the Court's ruling on Plaintiffs' twelfth claim, Defendant Janian's Motion to Dismiss the thirteenth claim is granted with leave to amend.

**5.     Fourteenth and Nineteenth claims for intentional infliction of emotional distress**

Defendants Matel and Flinders seek dismissal of the fourteenth claim, which is brought by Ryan's estate, and nineteenth claim, which is brought on behalf of Ryan's parents and his fiance. The elements of the tort of intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989); Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). Outrageous conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Id.  Conduct which exhibits mere rudeness and

8

insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress. See Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991); see also, e.g., Agrawal v. Johnson, 25 Cal.3d 932, 946 (1979) ("Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.") (disapproved of on other grounds in White v. Ultramar, Inc., 21 Cal.4th 563 (1999)).

Plaintiffs allege that Defendants acted with the intent to cause substantial and extreme emotional distress. See Sec. Am. Compl. ¶ 159. Plaintiffs also allege that Defendants' acts were done intentionally in disregard for Ryan's safety and health, and for the purpose of saving costs at the expense of his medical needs and for the purpose of inflicting emotional distress. See Sec. Am. Compl. ¶ 161. Similar to the showing under § 1983, the totality of the allegations in the complaint tend to show conduct by Defendants Matel and Flinders beyond professional negligence sufficient to state a claim for intentional infliction of emotional distress on behalf of Ryan's estate. Therefore, Defendants Matel's and Flinders's Motions to Dismiss Plaintiffs' fourteenth claim are denied.

Ryan's family members and fiancé[1] allege in the nineteenth claim that Defendants engaged in extreme and outrageous conduct with respect to Ryan's family members because they refused family requests to visit Ryan, and to ensure the proper treatment for Ryan. See Sec. Am. Compl. ¶ 186. However, there are no specific allegations that Dr. Flinders had any contact with Ryan's parents or fiancé during Ryan's treatment at the hospital. Further, the allegations with respect to contact between Ryan's parents or fiancé and Dr. Matel are limited to a July 2, 2007 phone call that Dr. Matel made to Ms. George in which Dr. Matel allegedly stated that Ryan was still in "poor physical condition. . . but showed slight improvement in that he moved his finger when pinched." Sec. Am. Compl. ¶ 50. General allegations that Dr. Matel and Dr. Flinders acted with intent to injure the emotional well-being of Ryan's family, without any allegations of outrageous conduct directed at them, are not sufficient to state a claim for intentional infliction of emotional distress.

---

[1] Defendants move to dismiss all claims brought by Ryan's fiancé, Tajmah Beauchamp. Claims by Ms. Beauchamp are discussed later in this order.

See Christianson v. Superior Court, 54 Cal.3d 868, 903 (1991) ("It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."). Therefore, Defendants' Motion to Dismiss the nineteenth claim is granted with leave to amend.

**6.     Eighteenth claim for negligent infliction of emotional distress**

Defendants Janian, Matel and Flinders seek to dismiss this claim brought against them by the individual Plaintiffs Valerie George, Donald George and Tajmah Beauchamp. There are two theories of recovery for negligent infliction of emotional distress: (1) bystander theory; and (2) direct victim theory. See Burgess v. Superior Court, 2 Cal.4th 1064, 1071 (1992).

Plaintiffs have failed to allege a bystander theory of negligent infliction of emotional distress. Under that theory, a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, the plaintiff:

> (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress - a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

Thing v. LaChusa, 48 Cal.3d 644, 667-78 (1989). It is the second prong that is at issue here. In Bird v. Saenz, 28 Cal.4th 910 (2002), the plaintiffs sued their mother's treating physician for negligent infliction of emotional distress that they allegedly suffered while waiting for their mother who was undergoing an outpatient surgical procedure that then required emergency surgery. The Bird Court determined that the second prong of the Thing test was not satisfied:

> The problem with defining the injury-producing event as defendants' failure to diagnose and treat the damaged artery is that plaintiffs could not meaningfully have perceived any such failure. Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders. Here, what plaintiffs actually saw and heard was a call for a thoracic surgeon, a report of Nita suffering a possible stroke, Nita in distress being rushed by numerous medical personnel to another room, a report of Nita possibly having suffered a nicked artery or vein, a physician carrying units of blood and, finally, Nita still in distress being rushed to surgery. Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event-the transected artery-had occurred, they had no basis for believing that another, subtler event was occurring in its wake.

10

Bird, 28 Cal.4th at 917; see also Golstein v. Superior Court, 223 Cal.App.3d 1415 (1990) (denying recovery for negligent infliction of emotional distress where parents observed effects of lethal overdose of radiation given by physician to their son including a grotesque alteration of their son's appearance because the parents did not perceive the event itself, the overdose of radiation), just the effects); Jansen v. Children's Hospital Center of East Bay, 31 Cal.App.3d 22 (1973) (denying recovery for negligent infliction of emotional distress where mother witnessed progressive decline and death of her child in the hospital allegedly caused by negligent diagnosis because she did not and could not witness the injury-producing event, the misdiagnosis). In Bird, the Court also distinguished a pre-Thing case in which recovery was permitted under a bystander theory:

> Plaintiffs in the case before us rely almost entirely on Ochoa v. Superior Court (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1] (Ochoa), a case predating Thing, supra, 48 Cal.3d 644. But Ochoa does not support their position. In that case, a boy confined in a juvenile detention facility died of pneumonia after authorities ignored his obviously serious symptoms, which included vomiting, coughing up blood, and excruciating pain. We permitted the mother, who observed the neglect and recognized it as harming her son, to sue as a bystander for NIED. Anticipating the formula we would later adopt in Thing, we explained that "when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted." (Ochoa, supra, at p. 170, italics added.) The injury-producing event was the failure of custodial authorities to respond significantly to symptoms obviously requiring immediate medical attention. Such a failure to provide medical assistance, as opposed to a misdiagnosis, unsuccessful treatment, or treatment that turns out to have been inappropriate only in retrospect, is not necessarily hidden from the understanding awareness of a layperson.

Bird, 28 Cal.4th at 919-20 (citing Ochoa v. Superior Court, 39 Cal.3d 159 (1985)).

Here, Plaintiffs allege that they saw Ryan briefly in the emergency department prior to his admission and contact with the moving Defendants. See Sec. Am. Compl. ¶ 47. Plaintiffs argue that they were witnesses to Defendants' alleged ongoing neglect of Ryan and had special knowledge of what treatment Ryan needed because of his prior illnesses. However, there are no allegations that Plaintiffs witnessed any of Ryan's treatment or the misdiagnosis that they allege to have occurred. Therefore, pursuant to Golstein and Bird, Plaintiffs have not made sufficient allegations for a bystander theory of negligent infliction of emotional distress.

Under a direct victim theory, the principles from Thing do not apply:

> [T]he label "direct victim" arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is

11

> "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (Marlene F., supra, 48 Cal.3d at p. 590.) In these cases, the limits set forth in Thing, supra, 48 Cal.3d 644, have no direct application. (Marlene F., supra, 48 Cal.3d at p. 589, fn. 4; Christensen, supra, 54 Cal.3d at pp. 890- 891.) Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case.

Burgess v. Superior Court, 2 Cal.4th 1064, 1073 (1992). The Court first used the direct victim theory in Molien v. Kaiser Foundation Hospital, 27 Cal.3d 916 (1980). As described in Burgess:

> we found that a hospital and a doctor owed a duty directly to the husband of a patient, who had been diagnosed incorrectly by the doctor as having syphilis and had been told to so advise her husband in order that he could receive testing and, if necessary, treatment. (Molien, supra, 27 Cal.3d at p. 923.) We reasoned that the risk of harm to the husband was reasonably foreseeable and that the "alleged tortious conduct of the defendant was directed to him as well as to his wife." (Id. at pp. 922-923.) Under such circumstances we deemed the husband to be a "direct victim" and found the criteria for bystander recovery not to be controlling. (Id. at p. 923.)

Burgess, 2 Cal.4th at 1073-74. Courts have found direct duties for purposes of negligent infliction of emotional distress where a plaintiff's son was injured during childbirth (Burgess v. Superior Court, 2 Cal.4th 1064 (1992)), a plaintiff's children were molested by a psychiatrist who was also treating plaintiff (Marlene F. v. Affiliated Psychiatric Medical Clinic, 48 Cal.3d 583 (1989)), and where a defendant misdiagnosed a plaintiff's spouse with syphilis (Molien v. Kaiser Foundation Hospital, 27 Cal.3d 916 (1980)).

Cases in which the direct victim theory applied, however, involved direct relationships between the physicians and the plaintiffs. See Marlene F., 48 Cal.3d at 591 ("It bears repeating that the mothers here were the patients of the therapist along with their sons, and the therapist's tortious conduct was accordingly directed against both. They sought treatment for their children - as they had the right, and perhaps even the obligation, to do - and agreed to be treated themselves to further the purposes of the therapy. They were plainly entitled to recover for the emotional distress they suffered."); Burgess, 2 Cal. 4th at 1078, n.8 ("The issue of a father's recovery for negligent infliction of emotional distress resulting from injuries to his child during prenatal care and birth is not before us in this case. [internal citation omitted]. We note, however, that the physician-patient relationship critical to a mother's cause of action is almost always absent in a father's claim. It, therefore, appears that a father must meet the criteria set forth in Thing, supra, 48 Cal.3d 644, if he is to state a viable

12

1  claim."); see also Huggins v. Longs Drugs Stores, 6 Cal.4th 124 (1993) ("It was only because the
2  parents in Burgess, supra, 2 Cal.4th 1064, and Marlene F., supra, 48 Cal.3d 583, qualified as the
3  patients of the defendant caregivers that they could recover for emotional distress as the defendants'
4  direct victims. To put it another way, the duty assumed by the defendant physician included
5  provision of care to the plaintiffs themselves.  Here, the end and aim of the prescription dispensed by
6  defendant was to provide medical treatment for plaintiffs' infant son, Kodee. He, not plaintiffs, was
7  the only patient being served by the transaction.") (internal citations omitted); Jacoves v. United
8  Merchandising Corporation, 9 Cal.App.4th 88, 109 (1992) ("We hold a hospital or doctor may be
9  liable to the parents of a psychiatric patient for negligent infliction of emotional distress damages
10 caused by the breach of a duty to the parents arising out of a physician-patient relationship or
11 assumed by the hospital or doctor.  Such an assumed duty may arise from the utilization of the
12 parents as active instrumentalities in  the patient's treatment.").

   Here, there are no allegations that any Defendant doctors were also treating Ryan's parents or that they otherwise assumed a duty to provide care to them.  Therefore, the individual Plaintiffs have not stated a claim for negligent infliction of emotional distress under the bystander theory, and Defendants' Motions to Dismiss are granted on the eighteenth claim.  The Court doubts that such a claim could be stated, but Plaintiffs are granted leave to amend.

**7.    Claims by Tajmah Beauchamp**

Defendants seek to dismiss all claims against them brought by Ms. Beauchamp, Ryan's fiancé. As stated in the Court's December 23, 2008 Order, Ms. Beauchamp lacks standing to pursue her constitutional claims because she was not married to Ryan. See Dec. 23, 2008 Order at 16:4-17:10. Plaintiffs argue that Thing provides a basis for Ms. Beauchamp to recover under a bystander theory for negligent infliction of emotional distress:

> In most cases no justification exists for permitting recovery for NIED by persons who are only distantly related to the injury victim. Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children, and grandparents of the victim.

Thing, 48 Cal.3d at 668, n. 10.  However, in Elden v. Sheldon, 46 Cal.3d 267, 273 (1988), the Court precluded recovery for emotional distress for unmarried couples, and Plaintiffs have cited no

authority in which a fiancé was permitted to recover for intentional or negligent infliction of emotional distress. Therefore, Defendants' Motions to Dismiss claims by Ms. Beauchamp are granted without leave to amend.

**8.     Punitive damages**

Defendants argue that the prayers for punitive damages should be stricken as "redundant, immaterial, impertinent or scandalous matter" under Federal Rule of Civil Procedure12(f). Defendants argue that Plaintiff has not made a showing of fraud, malice or oppression that would justify punitive damages under California Civil Code § 3294, which states:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

See also Henry v. Lehman Commer. Paper, Inc., 471 F.3d 977, 998 (9th Cir. 2006) ("Under California law, punitive damages are appropriate where a plaintiff establishes by clear and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression or (3) malice. According to the definitions provided in section 3294(c), a plaintiff may not recover punitive damages unless the defendant acted with intent or engaged in 'despicable conduct.' 'The adjective "despicable" connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.'") (internal citation omitted); Jackson v. East Bay Hospital, 980 F. Supp. 1341, 1353-54 (1997) ("As set forth above, determination of whether to apply a federal or state law to a pendent state claim in federal court depends upon classification of the state law as procedural or substantive. The court considers California Civil Code section 3294 to be a substantive law, as it establishes a right to recover punitive damages, and lists the essential elements, rather than laying out a procedural requirement.").

Plaintiffs, however, have made serious allegations against these Defendants that, if true, would support a claim for punitive damages, including that Defendants acted with conscious disregard for Ryan's life and safety. Sec. Am. Compl. ¶ 77. They also allege that Defendants intentionally misrepresented or concealed essential facts about Ryan's condition that caused injury. Sec. Am. Compl. ¶ 77. They also allege that the callous disregard of Ryan's obvious known serious

medical needs is shown by the transfer back to the jail despite Ryan's critical condition.  Sec. Am. Compl. ¶ 88.  Defendants allegedly callously allowed Ryan to degenerate, suffer and die instead of treating him.  Sec. Am. Compl. ¶ 95.  They also failed to attend to Ryan's basic needs.  Sec. Am. Compl. ¶ 149.  Accordingly, because Plaintiffs have alleged sufficient facts regarding punitive damages at this stage of the litigation, Defendants' motion to strike is denied.

**Conclusion**

The Motions to Dismiss brought by Defendants Janian, Matel and Flinders are granted in part with leave to amend and denied in part.  After the February 10, 2009 oral argument but before this opinion was issued, Plaintiffs filed their third amended complaint as required by the Court's February 13, 2009 Case Management and Pretrial Order for Jury Trial.  All Defendants except Dr. Matel and Dr. Flinders answered the third amended complaint.  The Court assumes that the third amended complaint complies with the rulings made at the February 10, 2009 hearing that are reflected in this opinion.  However, Plaintiffs shall review the third amended complaint in light of the rulings made herein.  If the third amended complaint does not comply with this opinion, Plaintiffs shall file a fourth amended complaint no later than March 24, 2009.  If Plaintiffs file a fourth amended complaint, the second motion to dismiss filed by Defendants Matel and Flinders on March 6, 2009 will be denied without prejudice as moot.  If Plaintiffs do not file a fourth amended complaint, they shall file their opposition to the motion to dismiss no later than the regularly scheduled date of March 24, 2009.

**IT IS SO ORDERED.**

Dated: March 12, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge