IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALERIE GEORGE, et al.,

    Plaintiffs,

v.

SONOMA COUNTY SHERIFF'S DEPT., et al.,

    Defendants.

                                             /

No. C-08-02675 EDL

**ORDER GRANTING SUTTER HEALTH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' NINTH CLAIM**

This action arises from the death of Ryan George on July 9, 2007 while he was in the custody of the Sonoma County Sheriff's Department, and after he had received allegedly inadequate medical care from medical staff at the Sonoma County jail and at Sutter Medical Center of Santa Rosa. On November 10, 2009, the Sutter Health Defendants moved for judgment on the pleadings as to Plaintiffs' ninth claim for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Plaintiffs opposed the Sutter Health Defendants' Motion. The Court held a hearing on January 26, 2010. For the reasons stated at the hearing and in this Order, the Sutter Health Defendants' Motion for Judgment on the Pleadings is granted.

**Legal Standard**

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. Westlands Water Dist. v. Bureau of Reclamation, 805 F.Supp. 1503, 1506 (E.D.Cal.1992). "Judgment on the

pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir.1989).

A motion for judgment on the pleadings is treated the same as a motion to dismiss under Rule 12(b)(6). Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

EMTALA was enacted to ensure that individuals receive adequate emergency medical care, regardless of an ability to pay. See Jackson v. E. Bay Hospital, 246 F.3d 1248, 1254 (9th Cir. 2001). "Congress was concerned that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1255 (9th Cir. 1995). The Act protects all individuals, not just those who are uninsured. See Arrington v. Wong, 237 F.3d 1066, 1069-70 (9th Cir. 2001).

EMTALA requires hospitals with emergency rooms that participate in the Medicare program to screen any individual, whether insured or not, who comes to an emergency room and requests emergency medical treatment to determine whether the individual has an emergency medical condition. See 42 U.S.C. § 1395dd(a). An emergency medical condition is defined in relevant part

as:

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in-
> (i) placing the health of the individual ... in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C. § 1395dd(e)(1)(A).

If the hospital determines that an individual has an emergency medical condition, the hospital must either provide further medical examination and treatment as may be required to stabilize the patient, or transfer the individual to another medical facility under certain conditions. See 42 U.S.C. § 1395dd(b)(1), (c)(2). Under the statute, "to stabilize" means:

> with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, . . . .

42 U.S.C. § 1395dd(e)(3)(A). The term, "stabilized," means:

> with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, . . . .

42 U.S.C. § 1395dd(e)(3)(B). An individual who has not been stabilized cannot be transferred unless: (1) the individual requests a transfer after being informed of the risks, a physician certifies that the medical benefits reasonably expected from medical treatment at another facility outweigh the increased risks to the individual from the transfer, or a qualified medical personnel makes the above certification after a physician discusses the risks with the individual; and (2) the transfer is an appropriate transfer to that facility. See 42 U.S.C. § 1395dd(c)(1).

A hospital "does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition." Bryant v. Adventist Health System/West, 289 F.3d 1162, 1166 (9th Cir. 2002) ("An individual who receives substandard medical care may pursue medical malpractice remedies under state law."). EMTALA was not enacted to create a national standard of care or a federal claim for medical malpractice. See Baker v. Adventist Health, 260 F.3d 987, 993 (9th Cir. 2001) (citing Eberhardt, 62 F.3d at 1258).

Further, the patient stabilization requirement ends when a patient is admitted to the hospital

3

for inpatient care. See Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002) ("'The stabilization requirement is ... defined entirely in connection with a possible transfer and without any reference to the patient's long-term care within the system. It seems manifest to us that the stabilization requirement was intended to regulate the hospital's care of the patient only in the immediate aftermath of the act of admitting her for emergency treatment and while it considered whether it would undertake longer-term full treatment or instead transfer the patient to a hospital that could and would undertake that treatment. It cannot plausibly be interpreted to regulate medical and ethical decisions outside that narrow context.'"). "If EMTALA liability extended to inpatient care, EMTALA would be 'convert[ed] . . . into a federal malpractice statute, something it was never intended to be.'" Bryant, 289 F.3d at 1169.

Although the stabilization requirement ends upon admission to the hospital, the Bryant court carved out a narrow exception to protect against blatant circumvention of the stabilization requirement through sham "admissions:"

> We agree with the Sixth Circuit that a hospital cannot escape liability under EMTALA by ostensibly "admitting" a patient, with no intention of treating the patient, and then discharging or transferring the patient without having met the stabilization requirement. In general, however, a hospital admits a patient to provide inpatient care. We will not assume that hospitals use the admission process as a subterfuge to circumvent the stabilization requirement of EMTALA. If a patient demonstrates in a particular case that inpatient admission was a ruse to avoid EMTALA's requirements, then liability under EMTALA may attach. But this is not such a case.

Bryant, 289 F.3d at 1169. Because Plaintiffs' complaint is clear that Ryan George was admitted to the hospital (see Third Am. Compl. ¶ 44), the Sutter Health Defendants cannot be liable under EMTALA unless the Bryant exception applies. Bryant places the burden on the plaintiff to demonstrate that the admission was merely a ruse, with the hospital lacking any intention to treat the plaintiff.

Plaintiffs do not specifically allege that the Sutter Health Defendants lacked the intent to treat Plaintiff after they admitted him to the hospital. Rather, Plaintiffs ask the Court to infer the Sutter Health Defendants' lack of intent through other allegations about the motives underlying their treatment of Ryan. See, e.g., Third Am. Compl. ¶ 137 (alleging that the Sutter Health Defendants, "acting under pressure or directions from County and Sheriff's Department personnel, . . . intended

4

to discharge Mr. George to the Jail after a certain time period and/or following minimal improvement in his mental status, regardless of whether or not his sickle cell crisis - manifested largely in neurological symptoms - was sufficiently stabilized within the meaning of the statute."); ¶ 21 (alleging that the Sutter Health Defendants "*may* have caved to pressure from the County and Sheriff's Department to release him back to the Jail despite his critical medical status. These Defendants collaborated to authorize Mr. George's release to the Jail irrespective of the fact that Mr. George was never seen by a neurologist (despite his significantly altered level of consciousness), as well as these Defendants' failure to complete a final diagnosis.") (emphasis added); ¶ 124 (alleging that the County Defendants interfered with the medical judgment of the Sutter doctors, "urging or requiring that inmates such as Mr. George be returned to the Jail as soon as possible, even where they remained in need to hospital treatment."). It is questionable whether these allegations would be sufficient, if they stood alone, to support an inference of a lack of intention to treat Ryan.

More importantly, Plaintiffs' complaint contains several more specific allegations regarding a considerable amount of treatment that Ryan received after he was admitted to the hospital during his two day stay there. See Third Am. Compl. ¶ 45 (". . . following his admission, Mr. George continued to be diagnosed and treated primarily for an 'altered mental status' rather than for the ongoing and severe sickle cell crisis. . . ."); ¶ 49 (alleging that a radiologist performed an MRI of Ryan's brain, which showed micro infarcts consistent with sickle cell crisis, but doctors accepted the radiologist's diagnosis of the MRI as negative); ¶ 51 (alleging that Dr. Matheson told Ryan's family that he had been given a spinal tap); ¶ 56 (alleging that Ryan had a physical therapy consult); ¶ 57 (alleging that Ryan had been given IV and oxygen for at least some period while in the hospital); ¶ 58 (alleging that Ryan had an EEG, which was read as abnormal). These allegations of treatment are starkly inconsistent with the inference Plaintiffs ask the Court to draw that the Sutter Health Defendants lacked the intent to treat Ryan and admitted him to the hospital simply to avoid liability under EMTALA. The treatment allegations also distinguish this case from Morgan v. North Mississippi Medical Center, 403 F. Supp. 2d 1115, 1129-30 (S.D. Ala. 2005), upon which Plaintiffs rely. There, the court denied the defendant's motion to dismiss the EMTALA claim based on the Bryant exception where, unlike here, the plaintiff alleged that upon her husband's arrival at the

5

hospital with serious injuries, officials demanded that the plaintiff arrange payment of her husband's treatment and announced its intention to discharge her husband the very next day despite his serious injuries.

As Plaintiffs have not pled facts sufficient to support the Bryant exception to EMTALA, the Sutter Health Defendants' Motion for Judgment on the Pleadings as to Plaintiff's ninth claim is granted.

**IT IS SO ORDERED.**

Dated: February 9, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge