1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALERIE GEORGE, et al.,

        Plaintiffs,

  v.

SONOMA COUNTY SHERIFF'S DEPT.,
et al.,

        Defendants.

_____/

No. C-08-02675 EDL

**ORDER GRANTING IN PART AND
DENYING IN PART COUNTY
DEFENDANTS' MOTIONS TO
EXCLUDE EVIDENCE AND DENYING
COUNTY DEFENDANTS' MOTION TO
STRIKE**

On August 31, 2010, the County Defendants and Sheriff Cogbill filed their replies in support of their Motions for Summary Judgment. Also on that day, the County Defendants filed five Motions to Exclude Evidence submitted by Plaintiffs in connection with their oppositions to the Motions for Summary Judgment. On September 8, 2010, Plaintiffs filed responses to the Motions to Exclude Evidence. This Order resolves the Motions to Exclude Evidence. The Court has issued a separate order resolving the Motions for Summary Judgment.

On September 9, 2010, the County Defendants and Cogbill filed a Motion to Strike Plaintiffs' responses. See Hwang v. City and County of San Francisco, 2008 WL 4279686, at 1 n.1 (N.D. Cal. 2008) (granting motion to strike the plaintiff's opposition to evidentiary objections that were filed by the defendant with the reply, noting that the plaintiff "did not seek, let alone obtain, permission to file a document after the filing of the reply."). On September 14, 2010, Plaintiffs filed an opposition to the Motion to Strike. Even though Plaintiffs did not seek leave to file their responses to the Motions to Exclude Evidence, in the interest of resolving matters on a full record, the Court denies the County Defendants and Cogbill's Motion to Strike.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1.      **Motion to Exclude Sonoma County Grand Jury Reports, responses thereto and testimony pertaining to them**

       Plaintiffs rely heavily on several grand jury reports from 2002-2010 regarding, among other things, medical treatment at the county jail.  County Defendants argue that the reports should be excluded because they are not properly authenticated, are irrelevant, contain inadmissible opinion testimony, contain inadmissible hearsay, and are more prejudicial than probative.  The reports and responses thereto are located in the Wittels Declaration at exhibits 2, 7, 12, 13, 95-101, 114, 115.

       A.      **Authentication**

       County Defendants argue that the grand jury reports are not properly authenticated.  Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) ("Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'  We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.").  The only authentication of the grand jury reports is Wittels declaration, in which he says that the reports are "available at Sonoma County Superior Court website."  There is no information about the website, or any indication on how the information in the reports was gathered or how they were prepared.  The reports are not signed, none contain a web address, and most do not have the grand jury seal.  Further, many of the reports are not complete.  At least one does not have any letterhead indication that it is from the grand jury.  See Wittels Decl. Ex. 95.  Thus, County Defendants challenge not only the lack of authentication of the website, but also of the reports themselves.  See Lumoa v. Potter, 351 F. Supp. 2d 426 (M.D. N.C. 2004) (stating that document, titled "EEO Investigative Report" and signed by Equal Employment Opportunity (EEO) Complaints Investigator, which was not sworn, certified, or notarized, did not contain language similar to form language of statute authorizing unsworn declarations, was not printed on letterhead, and contained no insignia or logos of Postal Service, was inadmissible); Stewart v. Wachowski, 574 F. Supp. 2d 1074, 1091, n.4 (C.D. Cal. 2005) ("Neither the web address nor the origin of the web page is indicated. Rather, the text of the purported web page is the body of an email sent to Stewart by someone whose email address is "brownfhf@ aol. com." Defendants object to paragraph 7 of Stewart's declaration (which incorporates Exhibit 7), inter alia, on the basis that it lacks foundation and states facts that are not

2

1   within Stewart's personal knowledge. Stewart does not state how she knows that the information

2   reflected on Exhibit 7 comes from a web page, nor whether the web page is purportedly maintained

3   by Fox or some other entity. In fact, because a third party sent the email to Stewart, it appears that

4   her knowledge regarding the text of the email is purely derivative. Because she provides no

5   information indicating that she has personal knowledge of the fact that the text of Exhibit 7 can be

6   found on a web page, Stewart cannot authenticate the document, and it cannot be considered in

7   deciding the Terminator Defendants' motion for summary judgment.").

8          Plaintiffs argue that courts are generally lenient regarding evidence produced in opposition

9   to motions for summary judgment, and that the Court can consider inadmissible evidence as long as

10  the objection can be cured at trial.  See Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110

11  (E.D. Cal. 2008) ("In other words, when evidence is not presented in an admissible form in the

12  context of a motion for summary judgment, but it may be presented in an admissible form at trial, a

13  court may still consider that evidence. Summary judgment is not a game of "Gotcha!" in which

14  missteps by the non-movant's counsel, rather the merits of the case, can dictate the outcome. . . .

15  Again, Rule 56(e) requires only that evidence " would be admissible," not that it presently be

16  admissible. Such an exception to the authentication requirement is particularly warranted in cases

17  such as this where the objecting party does not contest the authenticity of the evidence submitted but

18  nevertheless makes an evidentiary objection based on purely procedural grounds."); see also Fraser

19  v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage, we do not

20  focus on the admissibility of the evidence's form. We instead focus on the admissibility of its

21  contents. . . . Because the diary's contents could be presented in an admissible form at trial, we may

22  consider the diary's contents in the Bank's summary judgment motion."); contra McConnell v.

23  Lassen County, 2007 WL 1931603, at *19-20 (E.D. Cal. June 29, 2007) (excluding grand jury

24  reports, stating: "there is no indication that these documents were official publications or that they

25  were even published by the Lassen County Grand Jury.  None of these documents are printed on

26  letterhead or have any other identifying mark demonstrating that they were produced by the Grand

27  Jury.  None of these documents are signed.  Two of these documents, the Report of Findings from

28  the On-site Review and the County Self-Assessment, are stamped "DRAFT."  As such, the court

1   cannot find that the documents submitted in Exhibit 10 are self-authenticating."). <u>Fraser</u>, which

2   post-dates <u>Orr</u>, allows consideration of the grand jury reports at this stage of the case despite the lack

3   of proper authentication.

4       **B.    Relevance**

5       Defendants argue that all of the reports, except for one, are beyond the scope of this case

6   and therefore irrelevant.  As described below, the Court has determined that the majority of the

7   grand jury reports are relevant and should not be excluded on that basis.

8       Wittels Declaration, Exhibit 7: <u>2009-2010 Sonoma County Civil Grand Jury Report</u>.  This

9   report contains portions relating to Ryan's death in custody and to management of the detention

10  facilities.  County Defendants argue that the report is unreliable and incomplete.  Further, County

11  Defendants argue that the investigation process described in the report was unreliable because the

12  grand jury did not have all of the investigation materials.  County Defendants also argue that the

13  facts stated in the report are not true.  These arguments go to the weight of the evidence, not the

14  admissibility.  Therefore, the relevance objection is overruled.

15      Wittels Declaration, Exhibit 12: <u>Million Dollar Inmate</u>.  County Defendants argue that this

16  report is irrelevant because it focuses on the rising cost overruns in jail medical expenses, and the

17  reasons that the County chose CFMG for the jail medical provider.  However, the County's financial

18  considerations are an issue in this case to the extent that Plaintiffs argue that the County has a

19  financial incentive to limit inmates' stays at the hospital based on the contract terms with Sutter

20  Medical Center.  The relevance objection is overruled.

21      Wittels Declaration, Exhibit 2 and 13: <u>Responses from County to the Million Dollar</u>

22  <u>Inmate</u>.  To the extent that these exhibits respond to the <u>Million Dollar Inmate</u> report, they are

23  relevant because the underlying report is relevant.  The portions of these exhibits that are unrelated

24  to the <u>Million Dollar Inmate</u> report are irrelevant and therefore excluded.

25      Wittels Decl, Exhibit 95:  <u>Officer-Involved Incidents</u>.  This 2002-2003 report is the grand

26  jury's review of Critical Incident Reports to determine their compliance with County law

27  enforcement protocol and appropriateness of law enforcement behavior during critical incidents.

28  The critical incidents in the report do not include Ryan's case.  Plaintiffs argue that the report is

4

**United States District Court**
For the Northern District of California

1  relevant because it addresses the issue of the lack of availability of past medical records, which

2  Plaintiffs argue is an issue in this case.  However, this grand jury report was from at least 2003 (it is

3  not dated or signed), which is four years before Ryan's death.  The relevance objection is sustained.

4      Wittels Declaration, Exhibit 96:  <u>Is Justice Being Served?</u>  County Defendants argue that

5  this report pertains to the 1999 death of a private citizen in her home and the subsequent prosecution

6  of the alleged murder case, and has nothing to do with the jail or this case.  This report is irrelevant

7  in that it addresses the conduct of the Sheriff's Department, and others, in investigating and

8  prosecuting a murder case and the termination of poor performing employees in general, but does

9  not address conditions at the jail.  The relevance objection is sustained.

10      Wittels Declaration, Exhibit 96:  <u>Evaluation, Discipline and Termination</u>.  County

11  Defendants argue that this report addressed various personnel department policies in light of

12  retirements, and that those issues are not relevant to this case.  Plaintiffs argue that this report

13  provides information about the dysfunctional process of employee discipline and is relevant to

14  Plaintiffs' claim that there is no accountability which they argue contributes to the grossly

15  inadequate care at the jail.  The relevance objection is sustained.  The report is not related to the

16  issues in this case.

17      Wittels Declaration, Exhibit 97:  <u>Correctional Officer Overtime, Understaffing and Injury</u>

18  <u>in the County Jail</u>.  County Defendants argues that this report is not relevant because it focuses on

19  disability injury costs related to overtime, which is not an issue in this case.  Plaintiffs argue that the

20  report describes significant understaffing at the jail, resulting in excessive overtime and fatigue for

21  officers.  Plaintiffs argue that this is relevant to their claim that the officers had an attitude of

22  hostility and indifference to medical issues, because it is rational to conclude that overworked

23  officers are less likely to be responsive to medical needs.  The relevance objection is sustained.  The

24  report does not address the treatment of medical needs of prisoners.

25      Wittels Declaration, Exhibit 98: <u>Mental Health Management Ills</u>.  County Defendants

26  argue that this 2004 report is irrelevant because it addresses issues pertaining to the Mental Health

27  Services Division of the Sonoma County Department of Health Services, regarding in large part, a

28  facility that is no longer in operation.  Plaintiffs argue that this report is relevant because the

United States District Court
For the Northern District of California

1  evaluations of Ryan by the County Mental Health Services were grossly inadequate.  This report is

2  irrelevant.  Mental health services are not at issue in this case.  The relevance objection is overruled.

3       Wittels Declaration, Exhibit 99: <u>Fatal Incident Report</u> and <u>Officer Involved Critical</u>

4  <u>Incidents</u>.  County Defendants argue that these reports are not relevant because the grand jury did

5  not do any independent investigation and only reviewed third hand reports by the DA's office and

6  law enforcement.  County Defendants argue that the issues investigated were unrelated to poor

7  medical care and/or misconduct by jail staff.  The first report is not irrelevant because it involved the

8  death of an inmate in custody.  The second report is a review by the grand jury of critical incidents,

9  and addresses deaths in custody.  The relevance objection is overruled.

10      Wittels Declaration, Exhibit 100: <u>Table of Contents with two reports</u>.  County Defendants

11  argue that the these reports, which go to the investigation of the death in custody of an inmate from

12  Alcohol Withdrawal Syndrome, are irrelevant because that syndrome is not at issue in this case.

13  County Defendants also argue that the reports are unreliable because none of the witnesses in the

14  reports are named.  Plaintiffs argue that this exhibit is relevant because the report addresses

15  improper bed checks, which Plaintiffs allege in this case.  These reports are not irrelevant.  The

16  relevance objection is overruled.

17      Wittels Declaration, Exhibit 101:  <u>Assignment of Health Care Access Agreement</u>.  County

18  Defendants argue that this report is irrelevant because it refers to negotiations in 2007-2008 for

19  transfer from Sutter to Santa Rosa Memorial Hospital of its inmate medical care obligations under

20  the County contract, but the transfer never occurred.  Plaintiffs argue that this is relevant because it

21  explains significant financial pressures facing Sutter due to its contract with the County.  This report

22  is not irrelevant to the issues in this case.  The relevance objection is overruled.

23      Wittels Declaration, Exhibit 114: <u>Response from County to grand jury report re: Officer-</u>

24  <u>Involved Incidents</u>.  County Defendants argue that this exhibit is irrelevant because the response

25  addresses computerized mental health records and visibility of inmates from the jail control desk,

26  which County Defendants argue are not at issue in this case.  Plaintiffs, however, argue that this

27  response shows Cogbill's knowledge of the grand jury's recommendations and his failure to follow

28  them.  For that purpose, the report is not irrelevant, so the objection is overruled.

United States District Court
For the Northern District of California

1    Wittels Declaration, Exhibit 115: <u>Response from County to grand jury report re: Death by</u>

2    <u>Incarcertaion (Alcohol Withdrawal Syndrome case).</u>  The relevance objection to this exhibit is

3    overruled for the same reason that the objection to Exhibit 100 is overruled.

4         **C.    Improper opinion**

5    County Defendants argue that the reports contain inadmissible opinion testimony by

6    laypersons, and that the law carefully monitors even those opinions given by experts, so these

7    reports, which are not given by experts, should be carefully examined.  <u>See</u> <u>Mateo v. M/S KISO</u>,

8    805 F. Supp. 761, 775 (N.D. Cal. 1991) ("Thus, even when offered by expert witnesses, conclusory

9    opinions without an identified basis in specific facts cannot prevent summary adjudication.").

10   Plaintiffs argue that the grand jury reports consistently present facts on which they based their

11   conclusions and therefore, the opinions can be used on summary judgment.

12        In general, the opinions in the reports are not conclusory.  Although the grand jurists are

13   not experts on the various topics in the reports, they are experts in conducting investigations of civil

14   matters, and the reports are a product of that expertise.  Accordingly, the Court overrules the

15   objection based on improper opinion evidence.

16        **D.    Hearsay**

17   County Defendants argue that the reports contain multiple levels of inadmissible hearsay.

18   Specifically, grand jurors relied on various third hand investigations and review of unspecified

19   documents to reach their decisions.  Plaintiffs argue that the reports are not hearsay because they are

20   not offered for the truth, and are instead offered to show that Defendants were on notice about

21   problems in the jail,  yet did nothing about them.  To the extent that the reports that pre-date Ryan's

22   death are offered to show notice to Defendants of problems with the medical care in jail, the reports

23   would not be hearsay.  However, the opposition briefs reveal that Plaintiffs offer the reports for

24   much more than notice.

25        Plaintiffs argue that where the reports are offered for the truth, they are admissible as

26   public records:

27        (8) Public records and reports. Records, reports, statements, or data compilations, in
          any form, of public offices or agencies, setting forth . . . (C) in civil actions and
28        proceedings and against the Government in criminal cases, factual findings resulting
          from an investigation made pursuant to authority granted by law, unless the sources

7

of information or other circumstances indicate lack of trustworthiness.

See Fed. R. Evid. 803(8)(County Defendants); see also Fed. R. Evid. 803(8) advisory committee note ("The more controversial area of public records is that of the so-called "evaluative" report. The disagreement among the decisions has been due in part, no doubt, to the variety of situations encountered, as well as to differences in principle. . . . Factors which may be of assistance in passing upon the admissibility of evaluative reports include: (1) the timeliness of the investigation, . . . ; (2) the special skill or experience of the official, . . .(3) whether a hearing was held and the level at which conducted, . . . ; (4) possible motivation problems . . . . Others no doubt could be added.  The formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility."); see also Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988) ("We hold, therefore, that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.").

Although County Defendants argue that "sufficient negative factors" are present in this case such that the reports are inadmissible hearsay, there is authority that civil grand jury reports fall within the public records exception to the hearsay rule and are trustworthy.  McConnell v. Lassen County, 2008 U.S. Dist. LEXIS 78993, at *9 (E.D. Cal. Oct. 3, 2008) ("Pursuant to California Penal Code Section 933, county grand juries have the authority and duty to investigate appropriate subjects and prepare reports including findings and recommendations. Such evaluative reports are based on a factual investigation and are thus admissible subject to the trustworthiness requirement of Rule 803(8)(County Defendants).").  In McConnell, the court stated:

> Defendant contends that the Grand Jury reports are untrustworthy because of the grand jury's lack of skill and experience. However, this is not a case where specialized  skill or expertise was needed to interpret the relevant facts. In this case, the Grand Jury gathered information from a variety of sources and summarized that evidence in the form of factual findings. The Grand Jury did not interpret the evidence in a manner that would require expertise, but merely conducted a factual investigation into the actions or inaction of Lassen County CPS and reported those findings in a public document. Further, these findings were based upon an extensive factual investigation; the grand jury "spent the greater part of its year in time and energy focusing on issues within Lassen Country government." (Grand Jury Final Report of Lassen County (2002-2003).)

United States District Court
For the Northern District of California

1  Further, admission of the Grand Jury Reports "is also consistent with the Federal
2  Rules' general approach of relaxing the traditional barriers to 'opinion' testimony.'"
   See Beech, 488 U.S. at 169. Experts may testify in the form of an opinion and even
   lay witnesses "may testify in the form of opinions or inferences drawn from her
3  observations when testimony in that form will be helpful to the trier of fact." Beech
   Aircraft Corp., 488 U.S. at 169 (referencing Federal Rules of Evidence 701-705). A
4  report chronicling the evidence gathered by the grand jury would be helpful to the
   trier of fact in this case. As such, the Grand Jury's alleged lack of specialized skill or
5  expertise does not render the Grand Jury Reports untrustworthy.

6  McConnell v. Lassen County, 2008 U.S. Dist. LEXIS 78993, at *10-12 (E.D. Cal. Oct. 3, 2008).

7       The Court  is persuaded by the reasoning in McConnell.  Thus, the hearsay objection to the

8  reports is overruled.

9       **E.     Federal Rule of Evidence 403**

10      County Defendants lastly argue that admission of the reports would be more prejudicial

11  than probative.  See Fed. R. Evid. 403.  County Defendants, however, fail to state how they would

12  be prejudiced by admission of the reports.  The objections based on Rule 403 is overruled.

13      **F.     Conclusion**

14      County Defendants' Motion to Exclude the Grand Jury Reports is granted in part with

15  respect to the reports that are not relevant.

16  **2.     Motion to Exclude evidence regarding care provided by Sonoma County Mental**

17  **Health**

18      County Defendants object to evidence regarding care provided by Sonoma County Mental

19  Health, including deposition testimony and the expert report of Amanda Ruiz, who is a psychiatrist

20  who opines that the mental health treatment Ryan received at the jail and at Sutter did not meet the

21  psychiatric standard of care.  See Ex. 65.  County Defendants argue that Plaintiffs did not disclose

22  Ruiz as an expert in their initial disclosures, and that she is not a proper rebuttal expert.

23      Plaintiffs retained Ruiz in February 2010 as a rebuttal witness to rebut expert witnesses Dr.

24  Richard Johnson, Commander Caruso, Dr. Albucher and hematologist Dr. Cage Johnson.  Only one

25  of those experts, however, was for the County Defendants: Commander Caruso.  Caruso did not

26  opine on whether "it was appropriate to rely on the mental health staff at MADF to diagnose and

27  treat Mr. George upon his return to MADF" as stated by Ruiz.  See Wittels Decl. Ex. 65 at 3.

28  Caruso opined that it was appropriate for Sheriff's Department personnel "to rely on CFMG's

9

United States District Court

For the Northern District of California

1    assessment of Mr. George." Supp. Sterling Decl. Ex. F at 6. Caruso did not make any opinions

2    about the mental health department. Thus, to the extent that Ruiz was disclosed to rebut Caruso, her

3    expert testimony is not appropriate.

4           Plaintiffs seem to argue that Ruiz is a proper rebuttal witness because she rebuts expert

5    testimony from other experts retained by other Defendants. However, even if Ruiz does properly

6    rebut other expert witnesses disclosed by other Defendants, she does not rebut the experts disclosed

7    by County Defendants or Cogbill, so her testimony is excluded. The County Defendants' Motion to

8    Exclude Evidence relating to Sonoma County Mental Health Services is granted.

9    **3.      Motion to Exclude testimony of Dr. Stephen Shohet**

10          Dr. Shohet is a hematologist who was disclosed by Plaintiffs as a rebuttal witness. The

11   County Defendants did not disclose any medical experts, and only disclosed a corrections expert and

12   an economist, so that Shohet is not a proper rebuttal witness in the context of the motion for

13   summary judgment. Shohet was not retained to rebut Caruso or Cohen, as he does not appear to

14   have any expertise in economics or corrections. The Shohet report does not say that he reviewed the

15   Caruso or Cohen expert reports. Thus, Shohet is excluded as an improper rebuttal expert. The

16   County Defendants' Motion to Exclude Evidence Shoet's testimony is granted.

17   **4.      Motion to Exclude Testimony of Daniel Vasquez**

18          County Defendants argue that correctional expert, Daniel Vasquez, is an improper rebuttal

19   witness because his testimony is duplicative of Bruce Bilke, also a corrections expert, who was

20   previously identified in Plaintiffs' initial disclosures. County Defendants also argue that Vasquez's

21   report extends far beyond rebutting County Defendants's correction expert, Caruso.

22          Even if the Vasquez report is duplicative of the Bilke rebuttal report, the County

23   Defendants have cited no authority to support striking the Vasquez report solely because it is

24   redundant. Further, Plaintiffs argue that the Vasquez and Bilke reports are not identical because

25   Vasquez is a corrections professional who was a former warden at San Quentin. Bilke is an

26   academic who studies jail management and policy. Even if the reports are somewhat duplicative,

27   the Court declines to exclude the Vasquez report at this time on that basis. See, e.g., Hurd v.

28   Yaeger, 2009 U.S. Dist. LEXIS 72030, at *10 (M.D. Pa. Aug. 13, 2009) ("Although we reserve the

**United States District Court**
For the Northern District of California

1    right to limit cumulative evidence at an appropriate time, we will not do so on the instant motion to

2    strike.").        Plaintiffs argue that the Vasquez report does not extend beyond the Caruso report, but

3    that even if it does, the parts that respond to Caruso's report are admissible.  Further, Plaintiffs argue

4    that the Vasquez opinions that go beyond Caruso's opinions should be admitted because the failure

5    to disclose him as a witness was substantially justified or harmless.  See Galindo v. Balt. Aitcoil Co.,

6    2008 U.S. Dist. LEXIS 111580, at *6-7 (E.D. Cal. Dec. 17, 2008) (stating that in considering

7    whether to exclude expert testimony, a court should consider the explanation for the failure to

8    disclose, the prejudice the opposing party, the potential for curing the breach by granting a

9    continuance and the importance of the testimony).  Plaintiffs argue that Vasquez was retained as a

10   rebuttal expert in February 2010 to rebut Caruso, and that if the opinions go beyond Caruso, that was

11   done in the interest of full disclosure.  Plaintiffs also argue that County Defendants have shown no

12   prejudice because they were able to depose Vasquez and have had his report since February, yet they

13   did not seek to strike him or to supplement Caruso's report.  On balance, and because County

14   Defendants have not shown prejudice, the Motion to Exclude Testimony of Daniela Vasquez is

15   denied.

16   **5.       Motion to Exclude Previously Undisclosed Witnesses and Documents**

17          County Defendants state that Plaintiffs' initial disclosures in March 2009 included many

18   witnesses by name, but stated, as to inmate witnesses:

19          Plaintiffs are additionally aware of inmates who witnessed some of the events at issue
             in this suit, however, until sufficient safeguards are in place to insure their safety and
20           freedom from intimidation and harassment, Plaintiffs will not identify those
             witnesses.  Plaintiffs reserve the right to subsequently identify those witnesses.
21

22   See Supp. Sterling Decl. Ex. A at ¶ 1.G.  Plaintiffs supplemented the initial disclosures on August

23   16, 2010, after both fact and expert discovery had closed and after County Defendants filed their

24   motion for summary judgment.  The supplemental disclosures list several new witnesses, including

25   inmates, and documents that County Defendants argue should be stricken because they are untimely.

26

27        **A.    Dr. David Elliot**

28          Dr. Elliot was the treating physician for inmate Anthony Duarte, who was the plaintiff in

United States District Court
For the Northern District of California

1   Duarte v. County of Sonoma, C-05-3195 MHP (EMC), in which Duarte alleged that he suffered

2   inexcusable delays in medical treatment for appendicitis while he was at the Sonoma County jail.

3   Elliot's declaration, dated December 19, 2006 was filed on January 2, 2007 in the Duarte case in

4   support of a motion for summary judgment that was neither heard nor decided by the assigned judge.

5   County Defendants argue that there is no reason that Plaintiffs could not have disclosed Elliot in

6   their initial disclosures, as part of discovery or otherwise.

7         Plaintiffs, however, argue that the Elliot declaration was a publicly filed document in

8   another case against the County Defendants, so County Defendants were aware of it.  Plaintiffs note

9   that the Elliot declaration was provided to County Defendants on July 14, 2010 at the Vasquez

10  deposition, so Plaintiffs did not need to supplement their initial disclosures.  See Fed. R. Civ. P.

11  26(e)(1)(A) ("A party who has made a disclosure under Rule 26(a)--or who has responded to an

12  interrogatory, request for production, or request for admission--must supplement or correct its

13  disclosure or response: (A) in a timely manner if the party learns that in some material respect the

14  disclosure or response is incomplete or incorrect, and if the additional or corrective information has

15  not otherwise been made known to the other parties during the discovery process or in writing; or

16  (B) as ordered by the court.").  The failure to disclose Elliot until recently was not substantially

17  justified because Plaintiffs knew about him since before this case was filed.  However, County

18  Defendants have not articulated any prejudice arising from Plaintiffs' late disclosure of Elliot.

19  Therefore, the Court declines to exclude Elliot.  However, because Elliot was not timely disclosed,

20  he may only testify as a fact witness as described in the Court's standing order.  See Case

21  Management and Pretrial Order for Jury Trial (docket number 58) ("All treating physicians who will

22  provide opinion testimony beyond that which can be provided by a lay person must be disclosed as

23  expert witnesses, but they need not prepare expert reports unless ordered to do so by the Court.").

24        **B.    Jami McBride**

25        McBride was an inmate who had an infection in her leg following surgery in March or

26  April 2006 and was unable to walk.  The infection got worse during her treatment at the jail,

27  eventually resulting in her hospitalization for 27 days during which she almost died.

28        At the hearing on September 24, 2010, the Court asked Plaintiffs' counsel when Plaintiffs

1   discovered that McBride and other inmates described  below had discoverable information.  On

2   October 1, 2010, Plaintiffs' counsel submitted a supplemental declaration stating that Plaintiffs

3   knew about McBride no later than March 4, 2010 when she was mentioned in a March 4, 2010

4   communication between Plaintiffs' counsel and another inmate, Tracy Alcantra.  Supp. Wittels Decl.

5   ¶ 4.  Plaintiffs state that they hired an investigator to go to the prison in which McBride is

6   incarcerated to talk to her and authenticate the letter that was sent with Alcantra's letter.  Id. ¶ 7.

7   Plaintiffs say that they were "only able to speak to Mc. McBride, confirm her possession of relevant

8   information, and obtain her signed declaration in August 2010."  Id.  However, there is no indication

9   of what happened from March to August that prevented Plaintiffs confirming her story before

10  August.  Plaintiffs have not made a sufficient showing to justify the late disclosure of McBride in

11  August 2010.  County Defendants' Motion to Exclude McBride is granted.

12  **C.    Eric Duran**

13  Duran is an inmate who developed a growth on his hand and contends that he did not get

14  adequate medical care in the jail.  A statement attributed to Duran is attached to the Alcantra

15  declaration, but it is unsigned, undated and unsworn.  See Alcantra Decl. Ex. L.

16  According to Plaintiffs, they cannot locate Duran.  Further, Plaintiffs' counsel's

17  supplemental declaration reveals that Plaintiffs knew of Duran as early as March 4, 2010.  Supp.

18  Wittels Decl. ¶ 4.  The supplemental declaration does not provide any information about efforts to

19  locate Duran.  Plaintiffs have not made a sufficient showing to justify the late disclosure of Duran in

20  August 2010.  County Defendants' Motion to Exclude Duran is granted.

21  **D.    Sarah Miles Navarre**

22  In a statement dated January 3, 2010 and received by Plaintiffs' counsel's office on

23  February 19, 2010, Navarre states that in 2010, Dr. Luders prescribed penicillin for her even though

24  she told him that she was allergic to it.  See Pl.'s Ex. 104; Supp. Wittels Decl. ¶ 3.  Plaintiffs state

25  that they have not as yet located Navarre, yet they listed her as a witness on August 16, 2010.  Id. ¶

26  6.

27  Plaintiffs have not made a sufficient showing to justify the late disclosure of Navarre whom

28  they knew about as early as February 19, 2010.  There has been no information about any specific

**United States District Court**
For the Northern District of California

13

United States District Court
For the Northern District of California

1   attempts made by Plaintiffs to locate Navarre.  County Defendants' Motion to Exclude Navarre is

2   granted.

3       **E.    Tracy Alcantra**

4       Alcantra states that Dr. Luders at the jail cancelled a scheduled hysterectomy because he

5   designated the surgery as elective.  According to Alcantra, Dr. Luders accused her of faking her

6   symptoms and simply seeking drugs and free surgery.

7       Plaintiffs' supplemental declaration states that from December 2009 to the present,

8   Alcantra periodically contacted Plaintiffs' counsel's office for purposes of representation.  Supp.

9   Wittels Decl. ¶ 2.  Plaintiffs state that Alcantra did not indicate that she was aware of any inmates

10  who had experienced poor medical care until February 19, 2010.  Id. ¶ 3.  That correspondence

11  enclosed a letter from inmate Sara Navarre and mentioned inmate Christine Barnes.  Id.  Alcantra

12  first mentioned the cases of inmates Jami McBride and Eric Duran and attached letters from those

13  inmates in correspondence dated March 4, 2010.  Id. ¶ 4.

14      Plaintiffs say that they hired a private investigator to interview Alcantra at Chowchilla

15  prison.  Id. ¶ 5.  Notably, they do not say when that investigator was hired or when the investigation

16  was complete.  Plaintiffs then say that they identified Alcantra "in light of the summary judgment

17  motions."  Id.

18      Plaintiffs have not made a sufficient showing to justify the failure to disclose Alcantra until

19  after the discovery cutoff dates and after County Defendants filed their motion for summary

20  judgment.  Plaintiffs knew she had discoverable information no later than February 2010.  County

21  Defendants' Motion to Exclude Alcantra is granted.

22      **F.    Eric Baker**

23      Baker was an inmate at MADF was contended that he experienced lengthy delays in

24  treatment of his broken facial bones.  Baker also brought an action against the County Defendants.

25  Baker v. County of Sonoma, C-08-3433 EDL.  County Defendants argue that even though Plaintiffs

26  have mentioned Baker during this litigation, there was no reason why they could not have listed him

27  on the initial disclosures or shortly thereafter.  The Baker declaration was signed on February 18,

28  2009.

14

1    Plaintiffs argue County Defendants took full discovery from Baker in his own case, and

2    therefore, are not prejudiced by not deposing him here.  Plaintiffs also note that some of the

3    documents that County Defendants seek to strike in this case were produced by County Defendants

4    in the Baker case, so there is little prejudice.  Although Plaintiffs have not provided substantial

5    justification for failing to timely disclose Baker, the failure was harmless in light of the parallel

6    litigation in this case and the Baker case, and because County Defendants have not established any

7    prejudice.  County Defendants' Motion to Exclude Baker is denied.

8         **G.    Michael Okler**

9    Okler is an attorney who was contacted by Ryan's family to help with Ryan's case when

10   the family determined that Ryan was not receiving adequate care.  See Supp. Wittels Decl. Ex. K.

11   Plaintiffs argue that Okler was disclosed in Plaintiffs' July 2009 responses to Defendants' document

12   requests, so he need not be disclosed in supplemental disclosures.  See Fed. R. Civ. P. (e)(1)(A).

13   Plaintiffs also note that Valerie and Donald George identified Okler in their depositions.

14   Plaintiffs have failed to offer substantial justification for failing to timely disclose Okler.

15   However, County Defendants have failed to establish any prejudice for the late disclosure.

16   Accordingly, County Defendants' Motion to Exclude Okler is denied.

17        **IT IS SO ORDERED.**

18   Dated: October 19, 2010

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California

15